RECEIVED
FEB 21 2020
CITY CLERK

STATE OF MINNESOTA　　　　　　　　　　　　　　　　DISTRICT COURT

COUNTY OF RAMSEY　　　　　　　　　　　　　SECOND JUDICIAL DISTRICT

---

Kim Diane Handy Jones, as Trustee for the next of　　　　Court File No:
kin of Cordale Quinn Handy,

    Plaintiff,

vs.

City of St. Paul, Minnesota; Todd Axtell, in his　　　　**SUMMONS**
individual and official capacities as St. Paul Chief of
Police; St. Paul Police Officer Mikko Norman, in his
individual and official capacities; St. Paul Police
Officer Officer Nathaniel Younce, in his individual
and official capacities; St. Paul Police Officer Officer
Jordan Wild, in his individual and official capacities,

    Defendants.

---

THIS SUMMONS IS DIRECTED TO City of St. Paul, Minnesota.

    1. **YOU ARE BEING SUED**. The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

    2. **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS**. You must give or mail to the person who signed this summons **a written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at:

    Paul J. Bosman, Attorney at Law
    4457 33rd Avenue South
    Minneapolis, MN 55406

    3. **YOU MUST RESPOND TO EACH CLAIM**. The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

    4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to

tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the complaint. If you do not want to contest the claims stated in the complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6. **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Date: February 20, 2020         By _____
                                Paul J. Bosman, #0388865
                                4457 33rd Avenue South
                                Minneapolis, MN 55406
                                Tel: (651) 485-7046

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF RAMSEY | SECOND JUDICIAL DISTRICT |

| | |
|---|---|
| Kim Diane Handy Jones, as Trustee for the next of kin of Cordale Quinn Handy,<br><br>Plaintiff,<br><br>vs.<br><br>City of St. Paul, Minnesota; Todd Axtell, in his individual and official capacities as St. Paul Chief of Police; St. Paul Police Officer Mikko Norman, in his individual and official capacities; St. Paul Police Officer Officer Nathaniel Younce, in his individual and official capacities; St. Paul Police Officer Officer Jordan Wild, in his individual and official capacities,<br><br>Defendants. | Court File No:<br><br><br><br><br><br><br><br>**COMPLAINT WITH JURY TRIAL DEMAND** |

For her Complaint, Kim Diane Handy Jones, in her capacity as Trustee for the next of kin of Cordale Quinn Handy ("Cordale"), states and alleges as follows:

1. By order dated April 12, 2017, Ramsey County District Court Judge Margaret M. Marrinan appointed Cordale's mother, Kim Diane Handy Jones ("Plaintiff"), as Trustee for the Next of Kin of Cordale Quinn Handy.

2. This is an action for monetary damages arising out of the March 15, 2017 shooting of Cordale by on-duty St. Paul police officers and subsequent failure to render aid while acting under color of law, resulting in Cordale's death, in violation of well-settled federal civil rights and state law.

3. Plaintiff further asserts a claim against City of St. Paul ("St. Paul") under *Monell v. Department of Social Services*, 436 U.S. 658 (1975), and *Canton v. Harris*, 489 U.S. 378 (1989).

1

## JURISDICTION AND VENUE

4. Jurisdiction is based upon Minn. Stat. § 484.01 and jurisdiction over pendant Federal claims is based upon Maine v. Thiboutot, 448 US 1.3.

5. Venue is proper in this Court pursuant to Minn. Stat. § 542.03.

## PARTIES

6. Decedent Cordale Quinn Handy was at all material times a resident of the State of Minnesota and of full age.

7. Plaintiff Kim Diane Handy Jones is Cordale's biological mother and has been appointed as Trustee for the heirs and next of kin for Cordale Quinn Handy pursuant to Minn. Stat. § 573.02.

8. Defendants Norman, Younce and Wild were, at all times relevant to this complaint, duly appointed and acting officers of the St. Paul Police Department, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Minnesota and/or the City of St. Paul.

9. Todd Axtell ("Chief Axtell") was, at times relevant to this complaint, Chief of Police or the Chief of Police of the St. Paul Police Department and a policy maker for the St. Paul Police Department.

10. The City of St. Paul, Minnesota, is a municipal corporation and the public employer of the Defendant Officers. Defendant City of St. Paul is sued directly and also on the theories of respondeat superior or vicarious liability and pursuant to Minn. Stat. § 466.02, for the actions of its officers and officials, including the Defendant Officers.

## FACTS

11. Cordale lived in an apartment at 795 East Sixth Street, St. Paul, MN with his significant other, referred herein as "MB."

12. On the evening of March 15, 2017, Cordale was experiencing a mental health crisis; he believed a man named Dante was in his apartment, trying to hurt or kill him.

13. Cordale called 911 for help but then hung up. Moments later, 911 called him back. He was respectful, telling them, "Someone is setting me up."

14. Still scared, Cordale fired 16 shots from a handgun into the sofa and other parts of the apartment.

15. Cordale then left his apartment building and began walking toward the adjacent street, Sinnen Street, yelling "Hey 911! Hey 911!"

16. Defendants Norman and Younce had been dispatched to the 795 East Sixth Street apartment building.

17. Defendants Norman and Younce exited the apartment building and met MB and a neighbor, hereinafter JLM just outside the door of the building.

18. MB and JLM informed Defendants Norman and Younce that Cordale was in crisis.

19. MB and JLM informed Defendants Norman and Younce that Cordale was carrying a non-functional handgun.

20. MB and JLM informed Defendants Norman and Younce that Cordale was traveling North on Sinnen Street.

21. Defendants Norman and Younce moved rapidly in the direction of Sinnen Street.

22. Cordale moved unsteadily Northward on Sinnen Street with a handgun dangling from his right hand. He was holding it by the end of the extended magazine.

23. Defendants quickly closed with Cordale near the middle of the block of Sinnen Street between 6th and 7th Streets.

24. Defendants Norman and Younce told Cordale to stop, get on the ground, and drop the gun.

25. Cordale stopped, turned to face the officers and moved to the ground.

26. Cordale tossed the gun, which landed three to four feet away from his feet.

27. Cordale then raised his hands above his head.

28. Seconds later, Defendant Younce opened fire on Cordale and Defendant Norman then began shooting shortly after.

29. Defendants fired eight shots, four shots each. Seven shots hit Cordale.

30. There was a significant delay between Defendant Younce's third and fourth shots.

31. One bullet struck Cordale's right forearm, entering the inner aspect and exiting the outer aspect.

32. Another bullet struck Cordale's right lower leg, inner aspect, entering through the front of the leg and traveling upward with partial exit at the back of the leg

33. Another bullet struck Cordale's right lower leg: Entrance in the outer aspect roughly mid-calf, the bullet traveled upward and exited in the front of the leg just below the knee.

34. Another bullet struck Cordale in the back: 7" from the top of the shoulder and 3.5" to the right of the midline. The bullet traveled upward and to the left, ending 1.5" from the top of the shoulder and at the midline.

35. Another bullet struck Cordale in the left side of back, 12" below the top of the shoulder and 1.125" from the midline. The bullet tracked sharply upward and forward, running through

the length of the left lung, collapsing the lung. The bullet lodged in the front chest wall 2.5" from the top of the shoulder and 6.5" left of the midline.

36. Another bullet struck Cordale in the right buttock: Entrance in the right buttock 22.25" from the top of the shoulder and 0.75" to the right of the midline. Exit is 21.5" from the top of the shoulder and 1.25" right of the midline with re-entrance into the lower back. A bullet lodged in the skin of the low back.

37. Another bullet struck Cordale in the bottom of his foot and lodged in his foot.

38. On information and belief, the shot through the right forearm would be impossible if the right hand was pointed at the shooter.

39. Three to four gunshot wounds are consistent with Cordale being shot while in a seated or supine position with his hands out to his sides

40. At least three of seven shots that hit Cordale required that he be turned away from the shooter, and consistent with statements that he was rolled to his left side.

41. After Defendants Younce and Norman finished shooting, Defendant Wild drove onto the scene.

42. Defendant Wild saw Cordale moving, and said, "Stop moving."

43. Defendants Norman and Younce rolled Cordale over onto his chest.

44. Defendant Norman knelt on Cordale's back while he and Defendant Younce handcuffed Cordale.

45. At that point, Cordale was face down with arms stretched behind his back.

46. Despite seeing clear signs of life, none of the Defendants rendered medical aid to Cordale.

47. The St. Paul Fire Department's EMS unit pronounced Cordale dead approximately 8 minutes later.

48. Defendants Younce and Norman graduated from the Saint Paul Police Department's training academy.

49. Training records for the Saint Paul Police Department show that classroom training spent more time emphasizing officer preemptive action than compliance with the law regarding use of deadly force.

50. Deadly force training in the Saint Paul Police Department Academy as attended by Defendant Younce and Defendant Norman stated that waiting for a suspect to show that the suspect was a threat could endanger the officers' safety because they would not be able to react in time if they waited until the threat was evident.

51. Training records for Defendants Younce and Norman show quarterly training on firearm use following graduation from Saint Paul Police Department Academy Training.

52. Training records for Defendants show no instruction on legal requirements for deadly force use following their graduation from Saint Paul Police Academy.

53. Training records for Defendants Younce and Norman show no records of first aid training following their graduation from the Saint Paul Police Academy.

54. Police culture encompasses a norm described as "if one shoots, all shoot." This norm is thought to show that if one officer believes a suspect poses a threat requiring the use of deadly force, all officers must shoot to demonstrate that they also believed the suspect posed a threat of deadly force.

55. On information and belief, the Saint Paul Police Department did nothing to dissuade officers from the "if one shoots, all shoot" norm.

56. On information and belief, the Saint Paul Police Department conducted timed shooting exercises with officers firing simultaneously, conditioning officers to fire simultaneously.

CASE 0:20-cv-00707-DSD-ECW Doc. 1-1 Filed 03/11/20 Page 9 of 15

57. On information and belief, the Saint Paul Police Department trained officers to shoot until "the threat goes down."

## CLAIMS FOR RELIEF

### COUNT 1: BATTERY AGAINST DEFENDANTS NORMAN AND YOUNCE

58. Paragraphs 1 through 57 are incorporated herein by reference as though fully set forth.
59. Defendants Norman and Younce fired their handguns at Cordale with the intent to injure Cordale.
60. Defendants Norman and Younce's actions were not excused by self-defense nor any other justification.
61. Defendants Norman and Younce's actions were not excused by self-defense nor any other justification. Norman and Younce injured Cordale by their actions, causing him pain and suffering, harming him in an amount in excess of $100,000

### COUNT 2: WRONGFUL DEATH AGAINST DEFENDANTS NORMAN AND YOUNCE

62. Paragraphs 1 through 57 are incorporated herein by reference as though fully set forth.
63. Cordale's death was caused by the battery described in Count 1.
64. Plaintiff is the duly appointed trustee for the heirs and estate of Cordale.
65. Minn. Stat. §573.02 states that the trustee may bring an action for a death caused by a wrongful action.
66. Minn. Stat. §573.02 further states that damages may be awarded by jury determination.
67. Minn. Stat. §573.02 further states that punitive damages may be awarded as provided in Minn. Stat. §549.20.

7

68. Defendants Younce and Norman acted with deliberate disregard for Cordale's rights in perpetrating the battery described in Count 1.

69. Cordale's heirs and next of kin were damaged as enumerated in Minn. Stat. § 573.02, in an amount in excess of $100,000.

### COUNT 3: NEGLIGENCE PER SE AGAINST DEFENDANTS NORMAN, YOUNCE AND WILD

70. Paragraphs 1 through 57 are incorporated herein by reference as though fully set forth.

71. Defendants Younce, Norman and Wild were aware that Cordale was alive immediately after the shooting.

72. Minnesota state statute 609.662 requires "a person who discharges a firearm and knows or has reason to know that the discharge caused bodily harm to another person shall immediately investigate the extent of the person's injuries and render immediate, reasonable assistance to the injured person."

73. As a result of their failures to provide immediate aid in accord with Minn. Stat. § 609.662, Defendants Younce, Norman, and Wild committed Negligence per se.

74. As a result of Defendants negligence per se, Cordale suffered pain and died, being harmed in an amount in excess of $100,000.

### COUNT 4: GROSS NEGLIGENCE AGAINST DEFENDANTS NORMAN, YOUNCE AND WILD

75. Paragraphs 1 through 57 are incorporated herein by reference as though fully set forth.

76. Defendants Younce, Norman and Wild were aware that Cordale was alive immediately after the shooting.

77. Minnesota State Statute § 609.662 requires "a person who discharges a firearm and knows or has reason to know that the discharge caused bodily harm to another person shall

immediately investigate the extent of the person's injuries and render immediate, reasonable assistance to the injured person."

78. Defendants Younce, Norman and Wild owed a duty to immediately investigate Cordale's injuries and render immediate aid.

79. Minnesota police officers are required by the Peace Officers Standards and Training Board, the state licensing agency for law enforcement officers, to be certified as Emergency Medical Responders.

80. Defendants Younce, Norman and Wild possessed the skills to render immediate aid.

81. Contrarily, Defendants Younce and Norman knelt on Cordale's torso and restrained his arms behind his back.

82. On information and belief, Defendants Younce, Norman and Wild possessed knowledge regarding gunshot wounds to the torso.

83. As a result of the inaction in aiding Cordale and the positive actions contravened by a gunshot wound to the torso, Cordale was suffered pain and died, being harmed in an amount in excess of $100,000.

## COUNT 5: NEGLIGENT SUPERVISION AGAINST DEFENDANTS AXTELL AND CITY OF ST. PAUL

84. Paragraphs 1 through 57 are incorporated herein by reference as though fully set forth.

85. Defendants Younce, Norman and Wild were acting as police officers for the City of Saint Paul.

86. Defendants Younce, Norman and Wild were using equipment and uniforms issued by the City of Saint Paul.

87. Saint Paul Police Department failed to provide officers with necessary materials to perform first aid for gunshot wounds.

88. Defendants Younce, Norman and Wild were supervised by the Defendant City of Saint Paul and the Defendant Chief of Police, Chief Axtell.

89. Saint Paul Police Department training instructed officers in preemptive action over the restraint of force required by law, conditioned them to fire together, and failed to counter a "one shoots, all shoot" cultural belief.

90. On information and belief, Saint Paul Police Department failed to instruct officers in their statutory duty to provide immediate care to gunshot victims.

91. Sending armed officers to interact with citizens on the basis of this training failed a duty of ordinary care.

92. As a result of Defendant City of Saint Paul and Defendant Chief Axtell's negligent training, Defendant Younce and Defendant Norman fired their handguns too quickly and too often.

93. As a result of Defendant City of Saint Paul and Defendant Chief Axtell's negligent training and equipage, Defendant Younce and Defendant Norman failed to render immediate aid to Cordale.

94. As a result of Defendant City of Saint Paul and Defendant Chief Axtell's negligent supervision, Cordale was shot and killed and his family was injured by his loss in an amount in excess of $100,000.

## COUNT 6:  42 U.S.C. §1983 - FOURTH AND/OR FOURTEENTH AMENDMENT EXCESSIVE FORCE AGAINST DEFENDANTS NORMAN AND YOUNCE

95. Paragraphs 1 through 57 are incorporated herein by reference as though fully set forth.

96. Based on the factual allegations above, Defendants Younce and Norman, acting under the color of state law, violated Cordale's Forth and Fourteenth Amendment rights, through their use of excessive force to effect his arrest.

97. The conduct of Defendant Younce and Defendant Norman was intentional, deliberate, willful, and conducted in callous disregard of, and with gros indifference to Cordale's Constitutional rights.

98. As a result of these Constitutional violations, Cordale and his heirs and next of kin suffered damages in excess of $100,000.

## COUNT 7:  42 U.S.C. §1983 - FOURTH AND/OR FOURTEENTH AMENDMENT DELIBERATE INDIFFERENCE AGAINST DEFENDANTS NORMAN, YOUNCE AND WILD

99. Paragraphs 1 through 57 are incorporated herein by reference as though fully set forth.

100. Based on the factual allegations above, Defendants Younce, Norman and Wild, acting under the color of state law, violated Cordale's Eighth and Fourteenth Amendment rights, through their deliberate indifference to his medical condition, following the shooting.

101. As a result of these Constitutional violations, Cordale and his heirs and next of kin suffered damages in excess of $100,000.

## COUNT 8:  42 U.S.C. §1983 - FOURTH AND/OR FOURTEENTH AMENDMENT (*MONELL*) AGAINST DEFENDANTS AXTELL AND CITY OF ST. PAUL

102. Paragraphs 1 through 57 are incorporated herein by reference as though fully set forth.

103. Defendants City of Saint Paul and Chief Axtell developed and maintained policies and/or customs, and/or practices through their training regimes, predisposing officers of the police department to use deadly force when not appropriate or legal.

104. Defendants City of Saint Paul and Chief Axtell developed and maintained policies and/or customs, and/or practices through their training regimes, predisposing officers of the police department to use excessive amounts of deadly force.

105. Defendants City of Saint Paul and Chief Axtell cultivated and maintained policies and/or customs, and/or practices through their training regimes and culture predisposing officers to fire their weapons inappropriately when other officers fired.

106. Defendants City of Saint Paul and Chief Axtell developed and maintained policies and/or customs, and/or practices through their training regimes and failure to properly equip officers to properly care for gunshot casualties in the aftermath of a shooting incident.

107. These policies, customs, practices, lack of training and failure to properly equip officers were the cause of the violations of Cordale's Constitutional rights.

108. As a result of these Constitutional violations, Cordale and his heirs and next of kin suffered damages in excess of $100,000.

## RELIEF REQUESTED

**WHEREFORE, Plaintiff requests that this Court grant the following relief:**

a. Issue an order granting Plaintiff judgment against Defendants, finding that Defendants violated Cordale's constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution and that Defendants are liable to Plaintiff for all damages resulting from these violations, includin g damages for Cordale's conscious pain and suffering and loss of life and related damages;

b. Issue an order granting Plaintiff judgment against Defendants, finding that Defendants caused Cordale's wrongful death and that Defendants are liable to Plaintiff for all damages resulting from these violations;

c.  Award of compensatory damages to Plaintiff against all Defendants, jointly and severally;

d.  Award of punitive damages to Plaintiff against all Defendants, jointly and severally;

e.  Award of reasonable attorney's fees and costs to Plaintiff pursuant to 42 U.S.C. § 1988;

f.  Award of such other and further relief as this Court may deem appropriate.

**THE PLAINTIFF HEREBY DEMANDS A JURY TRIAL.**

Date: February 20, 2020        By _____
                                Paul J. Bosman, #0388865
                                4457 33rd Avenue South
                                Minneapolis, MN 55406
                                Tel: (651) 485-7046

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorneys' and witness fees may be awarded pursuant to Minn. Stat. § 549.211, to the opposing party.

Date: February 20, 2020        By _____
                                Paul J. Bosman

13