STATE OF MINNESOTA                                      DISTRICT COURT

COUNTY OF RAMSEY                               SECOND JUDICIAL DISTRICT

---

Kim Diane Handy Jones, as Trustee for the next of          Court File No:
kin of Cordale Quinn Handy,

      Plaintiff,

vs.

City of St. Paul, Minnesota; Todd Axtell, in his          **STATEMENT OF THE CASE**
individual and official capacities as St. Paul Chief of
Police; St. Paul Police Officer Mikko Norman, in his
individual and official capacities; St. Paul Police
Officer Officer Nathaniel Younce, in his individual
and official capacities; St. Paul Police Officer Officer
Jordan Wild, in his individual and official capacities,

      Defendants.

---

     Plaintif submit the following as her Statement of the Case, in accordance with the

Court's Trial Notice and Final Pretrial Conference Order, dated January 26, 2023 (Doc. 80).

## TRIAL COUNSEL

Counsel for Plaintiff:                              Counsel for Defendants:

Kevin O'Connor                                     Anthony Edwards

O'Connor Law Firm, Ltd.                            Office of the City Attorney

100 S. Wacker Drive, Suite 350                     750 City Hall and Courthouse

Chicago, Illinois 60606                            15 West Kellogg Boulevard

(312) 906-7609                                     Saint Paul, Minnesota 55102

koconnor@koconnorlaw.com                           (651) 266-8758
                                                   anthony.edwards@ci.stpaul.mn.us

Paul
Bosman
Chief
Counsel

CUAPB Litigation Unit
2136 Ford Parkway
#5328 St. Paul, MN
55116-1863 651-485-
7046

paulbosman@cuapb.org

## JURY/NON-JURY

A jury trial has been requested by the Plaintiff.

## LENGTH OF TRIAL

Defendants anticipate the trial taking five to six days.

## JURISDICTION

This is an action brought pursuant to the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.  Plaintiff also brings a state law claim for wrongful death.  This Court has jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441(a) & (c), and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## FACTS

At 2:21 a.m., Officer Nathaniel Younce received a call from Saint Paul Police Dispatch asking him to respond to a call at 795 6th Street East, Unit 209 in Saint Paul (the unit shared by Handy and Johnson-Blakney).   The dispatch was in response to a 911 call in which the caller heard a female screaming and said it "sounds physical."  Younce was working with his partner Mikko Norman that night.  Younce and Norman drove to the scene.

Upon their arrival, Younce could hear some yelling that sounded like it was coming from upstairs. When Younce and Norman went upstairs they heard yelling from elsewhere in the building. Younce then heard yelling nearby and saw two females, one white, one black, heading downstairs from the second floor. Younce followed them and asked what was going on. Jill Mollner, a neighbor and friend of Handy, told Younce that Handy had a gun, and Mollner or Johnson- Blakney, his girlfriend, told them that the gun was not loaded. Johnson Blakney stated that once the officers heard the word gun they stopped listening and ran off after Handy. The officers took off down the street after Handy, heading north on Sinnen Street toward Seventh Street. Johnson-Blakney pursued the officers on foot. Younce could see that a white dog (Vendetta) was walking alongside the man and he was holding something in his hand. Younce and Norman subsequently realized it was a handgun. Surveillance video from a nearby building clearly shows Handy staggering down the street, gun dangling loosely from his hand.

Officers Younce and Norman pursued Handy down the street.  At first, both officers were on the west side of the street, but Younce moved across the street so they could have two different angles toward Handy. While the officers pursued Handy, they turned and pointed their weapons at Mollner and Johnson-Blakney who were following them down Sinnen.

As they drew closer, Handy let go of Vendetta's leash, and the dog ran back toward the officers. When that happened, Younce could clearly see a handgun with an extended magazine in Handy's hand.

Officers Younce and Norman yelled conflicting commands, including a command to get down on the ground. Handy turned toward the officers, then fell backwards onto his buttocks in compliance with the order. Johnson-Blakney saw Handy throw the gun away as he fell, and Mollner saw no gun in Handy's hand when he was on the ground. Despite this Younce and Norman saw Handy raise his gun toward Norman briefly, but the officers did not shoot at that point. Handy put his arm down. At this point, Younce and Norman were yelling at Handy. Officers stated that Handy then raised his gun again and looked down the sights of his gun straight at Officer Norman. Officers Younce and Norman state that this pointing the gun, putting the gun down, and pointing the gun occurred in a timeframe of just a few seconds. Younce fired three shots at Handy. Norman also fired at Handy, and believes he fired three shots. Handy then rolled onto his side but was still moving. Younce could not tell whether Handy still had the gun in his hand, so he fired one more shot at Handy.

According to Plaintiff's medical expert, Handy bore scrapes on the palm of his right hand that he could not have sustained if he fell with a gun in his hand. Further, according to Plaintiff's medical expert, the officers' first shot passed through Handy's right forearm making it impossible for him to hold a firearm if he had been doing so prior to the officers' first shot.

## CLAIMS AND
## DEFENSES

### I.      Federal Claim.

Plaintiff has brought a cause of action under 42 U.S.C. § 1983, claiming that the Defendant officers violated Cordale Handy's constitutional rights through the use of excessive force.[1]

To determine whether the Defendant Officers used excessive force in violation of the Fourth Amendment, the jurors must determine "whether the amount of force used was objectively reasonable under the particular circumstances." *Cole Est. of Richards v. Hutchins*, 959 F.3d 1127, 1132 (8th Cir. 2020) (quotation omitted).  Jurors must evaluate what is objectively reasonable "from the perspective of a reasonable officer on the scene," which "turns on those facts known to the officer at the precise moment he effectuated the seizure." *Id.*  Though the Court must generally consider the totality of the circumstances, it is well-established that "absent probable cause for an officer to believe the suspect poses an immediate threat of death or serious bodily injury to others, use of deadly force is not objectively reasonable." *Id.* (quotation omitted).

Here, Plaintiff believes that the evidence shows that Handy was not armed and not an immediate threat both at the beginning of the officers' use of deadly force, as well as, the final shot, when the firing officer admits he could not tell if Handy was armed but used deadly force anyway.

Should the jury conclude that the Officers' actions were not objectively reasonable, they will of course be permitted to award damages to the Plaintiff as trustee of Cordale Handy's estate.  The damages available to the Plaintiff are governed by state wrongful death law. *Robertson v. Wegmann*, 436 U.S. 584, 590-592 (1978). Minnesota's wrongful death statute, at Minn. Stat. § 573.02, provides that:

The recovery in the action is the amount the jury deems fair and just in reference to the pecuniary loss resulting from the death, and shall be for the exclusive benefit of the surviving spouse and next of kin, proportionate to the pecuniary loss severally suffered by the death. The court then determines the proportionate pecuniary loss of the persons entitled to the recovery and orders distribution accordingly. Funeral expenses and any demand for the support of the decedent allowed by the court having jurisdiction of the action, are first deducted and paid.

## II.    State-Law Claim

In addition to her federal claim, Plaintiff asserts a state law cause of action for wrongful death. The jury will, as to this cause of action, need to determine whether Plaintiff has established pecuniary loss resulting from a death caused by the use of

excessive force. *See Crawford v. Turner*, No. CV 13-2562 (DWF/JJK), 2015 WL 7194985, at *5 (D. Minn. Nov. 16, 2015) (citation omitted) (elements of a wrongful death claim are the appointment of a trustee (not disputed herein) and death caused by a wrongful act or omission of the defendant, which causes pecuniary loss to the next of kin); *see also Paradise v. City of Minneapolis*, 297 N.W.2d 152,155 (Minn. 1980) (in order to establish a battery claim against an on-duty officer, plaintiff must demonstrate that the officer used excessive force). In addition, the jury must determine whether the Defendants' conduct was willful or malicious in nature, denying Defendants the protection of official immunity. The Minnesota Supreme Court has affirmed the vital importance of the doctrine of official immunity to shield public officials from liability for discretionary actions taken in the course of their official duties.    *Anderson v. Anoka Hennepin Independent School District 11*, 678 N.W.2d 651, 655 (Minn. 2004). The doctrine of official immunity is so broad as to "protect all but the plainly incompetent or those who knowingly violate the law."    *Dokman*, 637 N.W.2d at 292. "Official immunity is provided because the

community cannot expect its police officers to do their duty and then second-guess them when they attempt conscientiously to do it." *Pletan v. Gaines*, 494 N.W.2d 38, 41 (Minn. 1992).

Determining whether official immunity is available in a given context requires a two-party inquiry: "(1) whether the alleged acts are discretionary or ministerial; and (2) whether the alleged acts, even though of the type covered by official immunity, were malicious or willful and therefore stripped of the immunity's protection." *Dokman*, 637 N.W.2d at 296 (citation omitted).

As to the second prong of official immunity, the presence of willful or malicious conduct, a plaintiff opposing the application of official immunity is required to present "specific facts evidencing bad faith," rather than "bare allegations of malice." *Reuter v. City of New Hope*, 449 N.W.2d 745, 751 (Minn. Ct. App. 1990). The Minnesota Supreme Court has determined that in the official immunity context, willful and malicious are synonymous. "Malice means nothing more than the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991) (citations omitted).

Case law regarding the application of the second "willful and malicious" prong of official immunity has, over time, moved from an inquiry into the officer's state of mind to a more objective standard – whether the officer's conduct was objectively reasonable. *See Gleason v. Metro. Council Transit Operations*, 563 N.W.2d 309, 318 (Minn. Ct. App. 1997), *aff'd in part*, 582 N.W.2d 216 (Minn. 1998). Accordingly, the jury will be charged

with determining whether the officers' actions in the subject incident were objectively reasonable, just as with Plaintiff's Section 1983 cause of action.

Plaintiff believes that the evidence shown will support the Wrongful death claim.

Date: July 10, 2023                 By _____/s/ Paul J. Bosman_____
                                    Paul J. Bosman, #0388865
                                    2136 Ford Parkway, #5328
                                    Saint Paul, MN 55116
                                    Tel: (651) 485-7046
                                    paulbosman@cuapb.org