# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Kim Diane Handy Jones, as Trustee for the next of kin of Cordale Quinn Handy, | Civil File No. 20-cv-707-DSD-KMM |
| Plaintiff, | |
| vs. | |
| City of St. Paul, Minnesota; Todd Axtell, in his individual and official capacities as St. Paul Chief of Police; St. Paul Police Officer Mikko Norman, in his individual and official capacities; St. Paul Police Officer Nathaniel Younce, in his individual and official capacities; St. Paul Police Officer Jordan Wild, in his individual and official capacities, | **PLAINIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR RECOVERY FROM DEFENDANT ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND PREJUDGMENT INTEREST** |
| Defendants. | |

Plaintiff hereby moves the Court for an Order granting Plaintiff recoverable Attorneys' Fees, reimbursement of costs and interest on the judgment from Defendant and in support states:

Counsel for Plaintiff filed the Complaint in this matter on February 21, 2020, in Minnesota District Court. Cordale Handy was killed on March 15, 2017. Mr. Bosman was hired and the filing and service were completed within three weeks of the running of the statute of limitations for Wrongful Death. The Plaintiff and Mr. Bosman sought out the assistance of Mr. O'Connor as a recognized national civil rights lawyer due to the complexity of the case. As a prevailing party to a 1983/1988 cause of action, in addition to the verdict, the Plaintiff is entitled to recoverable costs, interest, and Attorney's fees. On August 2, 2023, a jury awarded $10,000,000 in compensatory damages and $1,500,000 in

1

punitive damages to the Plaintiff.  Judgment on the jury verdict has not been entered.  The Court instructed counsel to file any post-trial motions and a motion for allocation of the proceeds under the Wrongful Death within thirty (30) days or on or before September 1, 2023.  The Court indicated that he would then enter judgment on the verdict.

## COSTS

Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party *USCS Fed Rules Civ Proc* R 54.  For purposes of the Federal Rules of Civil Procedure, "judgment" is defined to "include [] a decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a).  *Auto Servs. Co. v. KPMG, LLP,* 537 F.3d 853, 856 (8th Cir. 2008).  Under Fed. R. Civ. P. 54(d)(1), "costs—other than attorney's fees—should be allowed to the prevailing party." Section 1920 of title 28 of the United States Code identifies the costs that may be taxed as "fees of the clerk and marshal, fees for printed or electronically recorded transcripts necessarily obtained for use in the case, fees and disbursements for printing and witnesses, fees for copies of necessary [*2]  papers, docket fees, and compensation of court appointed experts and interpreters." *Stanley v. Cottrell, Inc.*, 784 F.3d 454, 464 (8th Cir. 2015). Rule 54(d) establishes a presumption that the prevailing party is entitled to recover their costs. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 377, 133 S. Ct. 1166, 185 L. Ed. 2d 242 (2013).

Attached as Exhibit A is the Bill of Costs filed with the court. Included under "Other" on Exhibit A (Bill of Costs) are costs, normally not allowed under FRCP 54, but

2

allowable in §1983 cases, as discussed below in the Attorney Fees section of this brief. Exhibits A1 and A2 are a printout of the itemization of those costs including the affidavits of Attorneys Bosman and O'Connor verifying those costs as true and necessary. The costs included in the fields of the Bill of Costs are highlighted in yellow; the unhighlighted fields are those fields listed in "Other."   In addition, as Exhibits B and C, are the Averments/Affidavits of Attorneys Bosman and O'Connor including their biographies, verifying their attached attorney's fees, and swearing to any other facts included in this Memorandum. Plaintiff requests the award of the entire costs as documented in Exhibit A.

## PREJUDGMENT INTEREST

The Plaintiff is also entitled to prejudgment interest in this matter on the compensatory damages.  Minnesota statute provides:

> **(a)** When a judgment or award is for the recovery of money, including a judgment for the recovery of taxes, interest from the time of the verdict, award, or report until judgment is finally entered shall be computed by the court administrator or arbitrator as provided in paragraph (c) and added to the judgment or award. **...** Except as otherwise provided by contract or allowed by law, pre-verdict, pre-award, or pre-report interest shall not be awarded on the following:
> **(1)** judgments, awards, or benefits in workers compensation cases, but not including third-party actions;
> **(2)** judgments or awards for future damages;
> **(3)** punitive damages, fines, or other damages that are noncompensatory in nature;
> **(4)** judgments or awards not in excess of the amount specified in section 491A.01; and
> **(5)** that portion of any verdict, award, or report which is founded upon **interest**, or costs, disbursements, attorney fees, or other similar items added by the court or arbitrator.

**(c)**
**(1)**
**…(2)** For a judgment or award over $50,000, other than a judgment or award for or against the state or a political subdivision of the state or a judgment or award in a family court action, the **interest** rate shall be ten percent per year until paid.
*Minn. Stat. Ann. § 549.09* (LexisNexis, Lexis Advance through May 20, 2023)

The Minnesota Court of Appeals has found that pre-verdict interest in wrongful death cases does not apply to future damages. *Johnson v. Wash. Cty.*, 506 N.W.2d 632, 640 (Minn. Ct. App. 1993). Plaintiff believes that the majority of loss occurs at or near the time of the wrongful death, and that pre-verdict interest should be calculated on 50% of the compensatory damages award. Pre-verdict interest on pecuniary damages shall be computed from the date the case commences or a demand is made. Minn. Stat. § 549.09, subd. 1(b) (1988).  This matter was filed on 2/21/20, but a previous case on the same facts was filed on 4/12/2017. Counsel for that matter withdrew and a dismissal without prejudice was filed.  The Jury verdict for compensatory damages was $10,000,000.  Fifty percent (50%) of the verdict is $5,000,000. Interest is 10% per annum.  Interest on the judgment currently totals (calculating to 8/30/23) $3,191,308. (6.38years x ($5,000,000 x 10%). Counsel requests the addition of $3,191,308 to the jury's verdict in this matter as interest.

## ATTORNEYS FEES

A party seeking attorneys' fees and costs must make such a claim under Rule 54(d) and identify the statute or rule entitling the movant to the award and a fair estimate of the

amount sought. Fed. R. Civ. P. 54(d)(2)(A)-(B).  Plaintiffs' counsel is entitled to attorneys' fees for the successful prosecution of this claim.

Section 1983 expressly provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory [*10] or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . . 42 U.S.C. § 1983.  *North Dakota v. Heydinger*, No. 11-cv-3232 (SRN/SER), 2016 U.S. Dist. LEXIS 136007, at *9 (D. Minn. Sep. 29, 2016)

Congress enacted the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, authorizing the district courts to award a reasonable attorney's fee to prevailing parties in civil rights litigation. The purpose of § 1988 is to ensure "effective access to the judicial process" for persons with civil rights grievances. H.R.Rep. No. 94-1558, p. 1 (1976). Accordingly, a prevailing plaintiff "'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" S.Rep. No. 94-1011, p. 4 (1976), U.S. Code Cong. & Admin. News 1976, p. 5912 (quoting *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402 (1968)).  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (parallel citations omitted); see also *Barnard v.  Theobald*, 721 F.3d 1069, 1077 (9th Cir. 2013) ("'[A] court's discretion to deny fees under § 1988 is very narrow and . . . fee awards should be the rule rather than the exception.'"); *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1124 (9th Cir. 2008) (holding a prevailing plaintiff is "ordinarily entitled to a reasonable attorney's fee"), overruled on other grounds, *Arizona*

*v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014); *Sable Commc'ns v. Pac. Tel. & Tel.*, 890 F.2d 184, 193 (9th Cir. 1989)

According to the Supreme Court, "plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992) (citation and internal quotation marks omitted).

The Eighth Circuit has observed that ordinarily, attorney's fees under § 1988 are available to a prevailing civil rights plaintiff who "obtain[s] some relief on the merits of his claim." *D.C., Inc. v. Missouri*, 627 F.3d 698, 700 (8th Cir. 2010) (quoting *Farrar*, 506 U.S. at 111.) Under the avoidance exception, however, "when a district court 'grants relief on a state-law claim in order to avoid a constitutional issue, it may award attorney's fees if the constitutional claim was 'substantial' and both the constitutional and the state-law claims arose out of a 'common nucleus of operative fact.'" *Id.* (citing *Skokos v. Rhoades*, 440 F.3d 957, 962 (8th Cir. 2006)).  *North Dakota v. Heydinger*, No. 11-cv-3232 (SRN/SER), 2016 U.S. Dist. LEXIS 136007, at *28 (D. Minn. Sep. 29, 2016). In the instant case, Plaintiff's have received a verdict finding liability against Nathan Younce on both the state law claim of wrongful death, and the Constitutional claim of use of excessive force under the Fourth Amendment.  The jury's financial award is substantial, and the court clearly should award attorney's fees.

The amount of an attorney's fee award must be determined on the facts of each case and is within the district court's discretion. *Hensley v. Eckerhart*, 461 U.S. 424, 429,

6

437, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983); see *Hanig v. Lee*, 415 F.3d 822, 825 (8th

Cir. 2005) (citation omitted) ("Attorney's fees are within the broad discretion of the

district court . . . ."). The starting point for determining a reasonable attorneys' fee is the

"'lodestar'" calculation, which is the number of hours reasonably expended on the

litigation multiplied by a reasonable hourly rate. *Hanig*, 415 F.3d at 825 (citation

omitted); see *Hensley*, 461 U.S. at 433. The court may consider the following factors

when determining whether to adjust the lodestar amount upward or downward:

> "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3)
> the skill requisite to perform the legal service properly; (4) the preclusion of
> employment by the attorney due to acceptance of the case; (5) the customary fee;
> (6) whether the fee is fixed or contingent; (7) time limitations imposed by the
> client or the circumstances; (8) the amount involved and the results obtained; (9)
> the experience, reputation, and ability of the attorneys; (10) the "undesirability" of
> the case; (11) the nature and length of the professional relationship with the client;
> and (12) awards in similar cases." *United HealthCare Corp. v. Am. Trade Ins.
> Co.*, 88 F.3d 563, 574 n.9 (8th Cir. 1996) (quoting [*47] *Hensley*, 461 U.S. at 430
> n.3). *North Dakota v. Heydinger*, No. 11-cv-3232 (SRN/SER), 2016 U.S. Dist.
> LEXIS 136007, at *45-47 (D. Minn. Sep. 29, 2016).

Plaintiff requests a lodestar factor upward of 2.5x the hourly rate the attorneys would
normally be compensated hourly to fully compensate the plaintiff. The plaintiff signed a
contingency fee agreement and the plaintiff will not be fully compensated for her
constitutional claim if the 2.5x lodestar multiplier is not included.. The lodestar factors
strongly favor an upward multiplier in this case. Mr. O'Connor has expended 1,182
hours at $750.00 per hour totaling $886,500.00. Mr. Bosman has expended 825.8 hours
at $550.00 per hour totaling $454,190.00. Mr. Cobbett has expended 141.95 hours at
$400 per hour totaling $56,780.00. Plaintiff is requesting an attorney fee award with a
lodestar factor upward of 2.5x on the attorneys' fees in the amount of $3,493,675.00
(total hourly $1,397,470 x 2.5). See Exhibits B, C, and D. Plaintiff is also requesting the
additional costs which are ordinarily not recoverable under a civil judgment as additional
fees under a Section 1983 case in the amount of $31,851.62, included as "Other" on the
Bill of Costs, filed with the Court. "[W]ithin this Bill of Costs are 'other costs,' including
travel expenses. [*14] Ordinarily, such costs are not recoverable under 28 U.S.C. § 1920.
But the authority to award such expenses does not come from Section 1920; rather, it
comes from Section 1988. See, e.g., *Jenkins v. Kan. City Mo. Sch. Dist.*, 525 F.3d 682,
682 n. 1 (8th Cir.2008) ("travel expenses and other out-of-pocket expenses that a law

firm normally would bill to its client are more properly characterized as part of an attorney fee award" under Section 1988 than costs under Section 1920); *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294-95 (8th Cir.1996) ( per curiam ) (same)

*Holland v. City of Gerald*, No. 4:08CV707 HEA, 2013 U.S. Dist. LEXIS 55516, at *13-14 (E.D. Mo. Apr. 18, 2013)

### Factors Favoring Attorney Fees and Lodestar Multiplier

The Fees Customarily Charged for Similar Legal Services Reasonableness of hourly rates are determined by reference to those rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stemson*, 465 US 886, 896, n.11 (1984); see also *Domtar, Inc. v. Niagara Fire Ins. Co.*, 563 N.W.2d 724, 741 (Minn. 1997) (noting other factors involved in the question of a reasonable fee). Plaintiff's counsel, Mr. O'Connor represents clients entirely on a contingency basis and does not charge an hourly fee. Mr. O'Connor has brought actions across the country defended by national firms with significant § 1983 expertise. Litigation, such as this, involves a national market because the number of plaintiff's firms, with the necessary expertise and are willing take the risk and devote the resources to litigate complex claims, is small. The City of St. Paul has the ability to use employed city attorneys or outside counsel.  They chose to use a City attorney in this case and therefore his hourly rate is not instructive.  Thus, the relevant hourly rate is the "nationwide market rate" and opposing counsel's rates are instructive because Plaintiffs charge an entirely contingent fee. *Kruger*, 2016 WL 6769066, at *4; *Sims v. BB&T Corp.*, No. 15-705, 2019 WL 1993519, at *2 (M.D.N.C. May 6, 2019); *Beesley v. Int'l Paper Co.*, No. 06-703, 2014 WL 375432, at *3 (S.D. Ill. Jan. 31, 2014); *Abbott*, 2015 WL

4398475, at *2; *Tussey v. ABB Inc.*, No. 06-4305, 2015 WL 8485265, at *7 (W.D. Mo.
Dec. 9, 2015).

However, even using a local rate, the rates being charged here are reasonable given
the type of litigation involved. In 2008, the Fourth Judicial District in Hennepin County,
Minnesota, entered an order granting motion for attorney's fees (see *Cedar Fair v.
Minnertainment Company*, No. 27-CV-05-112336 Order, entered April 8, 2008, attached
as Exhibit E.) In that matter, Plaintiff Cedar Fair's Motion for an Amount of Attorneys'
Fees, Costs, Disbursements and Expenses was granted. Defendant Minnertainment
complained about the decision by Cedar Fair to hire California counsel. In response to
this qualm, the court wrote:

> Agibson Dunn & Crutcher's fees are cheap by comparison to other lawyers. Cedar
> Fair could have hired Benjamin Civiletti and the Venable Law Firm. Mr.
> Civiletti's hourly rate is $1,000.00. Just as remarkable, the law firm of Dorsey &
> Whitney located here in Minnesota reportedly has an associate whose reported
> hourly rate is $835.00."

In writing this, the Court referenced Fortado, Lindsay; Hourly Billing Rates Continue to
Rise, The National Law Journal. December 12, 2005.

The Fourth Judicial District in Hennepin County's own recognition of local
attorney's fees surpassing $835.00/hour back in 2008 is indicative that $750 per hour is
reasonable for Mr. O'Connor's experience, especially considering that $1 in 2008 is
equivalent in purchasing power to about $1.42 today.  See Judge Burke's Order attached
as Exhibit E. Judge Burke in his memorandum decision found that the reasonable rate of
local attorneys in Minnesota that litigated complex matters ranged between $835 pr hour

to $1,000 pr hour.  It should be noted that this was back in 2005.  The hourly rates being

charged by counsels here are reasonable.

   In addition to the hourly rate, an upward lodestar of 2.5x is reasonable in this case.

Courts have approved upward lodestars between 1.5x and 3x the hourly rate.  The Court

approved a lodestar of 3x multiplier *(Rajender v. University of Minnesota*, 546 F. Supp.

158 (D. Minn. 1982). "In light of the undesirability of Plaintiffs' case, the Court finds that

adjustment of the lodestar is "necessary to the determination of a reasonable fee." *Blum v.

Stenson*, 465 U.S. 886, 898 (1984). To account for the undesirability of the case, the

Court will adjust the lodestar upward by use of a 1.5 multiplier. See *Guam Society of

Obstetricians and Gynecologists v. Ada*, 100 F.3d 691, 697 (9th Cir. 1996) (approving the

use of a 2.0 multiplier based on the "extreme undesirability of the case"); *Gomez v.

Gates*, 804 F.Supp. 69, 78 (C.D. Cal. 1992) (using a 1.75 multiplier "to reflect the

peculiarly undesirable nature of th[e] case").

   Courts have held that under the broad heading of "contingent nature of success"

this Court must examine the essence of the burden undertaken by counsel, to wit, the

likelihood of success, viewed at the time of filing suit. *Lindy Bros. Builders, Inc. v.

American Radiator Standard Sanitary Corp.,* 540 F.2d 102,  117 (3rd Cir. 1976).

When analyzing the "contingent nature of success," the Court in *Rajender* held that the

analysis must include an evaluation of the following factors (underlined):

   1) the complexity and/or novelty of the legal issues involved (This case is the first
   recorded verdict where the police claimed the person pointed a gun at them and
   witnesses disputed that fact where it was not caught on film and a jury found for

10

the plaintiff.  This type of finding will have national implication to give hope to other claimants because it should prevent officers from changing their story to cover up their actions);

2) the difficulty of proving the claims (In this case even the Court at first blush questioned whether the plaintiff would prevail, bifurcating the trial, and telling the jury that their service might only take "a few days" until the tone shifted at trial based on rigorous cross examination and presentation of evidence.  In addition to the fact that several other local lawyers rejected taking the case);

3) the number of hours of work expended without the guarantee of remuneration (In this case there was over 2000 combined hours of just attorney work with the risk of no renumeration and having to pay the costs of prosecution that the plaintiff could not afford);

4) the amount of out-of-pocket expenses advanced (here approximately $50,000 in costs for extremely difficulty case); and

5) the delay in receipt of payment for services rendered (Here over 6.5 years from the shooting and 2.5 years of active litigation).

The Court in *Rajender* stated,

"At the beginning of this litigation, counsel(s) were faced with the possibility of recovering attorneys' fees only if the Court ruled in favor of the plaintiff on the merits, and then only if the Court deemed an award of attorneys' fees appropriate under the circumstances. To add to the uncertainty, even if the plaintiff prevailed at trial, there was no guarantee that the judgment would have been affirmed on appeal. The defendant in this case, the University of Minnesota, was at that time, and still is today, an internationally known and respected academic institution and one of the largest employers in the State of Minnesota. The financial resources on which the University could draw to defend itself against such claims were enormous in comparison to the resources of the plaintiff." *Rajender,* 546 F. Supp. 158.

Likewise in this case, the City of St. Paul has enormous resources to defend this

action and hire experts with little to no risk.  St. Paul has the opportunity to use City

employee attorneys at little to no expense compared to the use of outside counsel.  The

plaintiff was required to go out of state to find counsel who would handle this difficult matter from a large Metropolitan City such as Chicago.

   **E. The Experience, Reputation, and Ability of Counsel.**   The skill, experience, and quality of work of counsel are also important factors in setting a fair fee. As demonstrated by the history of the case, Plaintiffs' Counsel are skilled and experienced in § 1983 actions, and they have devoted the effort and time necessitated by the circumstances, including the complexity of the legal and factual issues.  Plaintiffs' Counsel have prosecuted this case efficiently and have achieved an excellent result.

   Paul J. Bosman was first licensed as an attorney in Minnesota in 2008.  He has been involved in litigation for over 15 years in both State and Federal Courts.  He has been involved in the last five years in complex litigation with a focus on police brutality and excessive force cases.  He has tried seven cases and has been the lead counsel in nearly all of them.  He has worked on over 40 police brutality/excessive force cases in his career and had to devote a significant time and resources to prosecute this matter.  He has successfully argued a murder exception to the three-year statute of limitations on a wrongful death 1983 cases in the District Court for the State of Minnesota.  He agreed to take over this case with only three weeks left on the statute of limitation when several other counsels had rejected the file due to high risk involved in obtaining a favorable result.  This matter is the first recorded jury verdict that counsel is aware where an officer claimed that a decedent pointed a gun at them before shooting that resulted in a verdict for the plaintiff without video evidence. See Exhibit B.

12

Kevin W. O'Connor is the founding partner and principal at O'Connor Law Firm, Ltd. out of Chicago, Illinois. He has been a practicing lawyer for 30 years. He has tried approximately 80 trials to verdict, all as the lead counsel in both State and Federal Court. He has obtained multiple million-dollar verdicts. He has been involved in thousands of depositions. He has extensive experience in 1983 litigation for the last 15 years. He has handled civil rights cases in numerous states including Illinois, Wisconsin, Minnesota, Florida, Washington State, and Texas. He has handled other cases on a national scale in Mexico, Canada, and Ramallah. He is a nationally recognized civil rights lawyer on behalf of plaintiffs. He is past president of a local Bar Association. He has been a commentator for news organizations in the area of serious personal injury and wrongful death. He practices almost exclusively on behalf of plaintiffs which involve contingent fee contracts due to the plaintiff's inability to pay his reasonable hourly rate. Currently, on the few occasions he has been asked to take on matters at an hourly rate, he has charged up to $1,000.00 per hour. Over the past 15 years, he has routinely turned down civil rights cases where it was alleged that the plaintiff had a gun due to the high degree of uncertainty and the necessity of trial to obtain a successful outcome. He had to turn down other lucrative matters where clients specifically requested his services in order to take on the Handy matter. The Handy matter took considerable time and resources to prosecute because of the highly contentious and difficult nature of the case. All of the pretrial depositions had to be handled by Mr. O'Connor personally. See Exhibit C.

Nathaniel R. Cobbett began working with O'Connor Law Firm as a civil rights litigation clerk in the fall of 2018, while working toward his J.D. at Loyola University Chicago School of Law.  Mr. Cobbett was the main author of the successful class-certification and Seventh Circuit Court of Appeals response briefs related to an ongoing prisoners' rights class-action lawsuit, pending in the Northern District of Illinois, Eastern Division.  Following law school, Mr. Cobbett worked for the Law Offices of the Cook County Public Defender, in Chicago, gaining trial experience while defending the constitutional rights of indigent individuals facing misdemeanor and felony domestic-related charges. Mr. Cobbett returned to O'Connor Law Firm as an associate in January of 2023, also working part-time as an adjunct professor teaching trial advocacy at his alma mater, and has been licensed to practice law in the State of Illinois since January of 2021.  See Exhibits D.

**F. The Contingent Nature of the Representation**. The contingent nature of the representation also supports the reasonableness of the hours expended and the requested fee award. Plaintiffs' Counsel litigated this matter on a contingent basis with no guarantee of recovery. Thus, Plaintiffs' Counsel had an incentive to litigate this matter efficiently. The Plaintiff would not have been able to pursue this litigation other than on a contingency fee basis. Plaintiff's counsel entered into contingency fee agreement with the Plaintiff for one-third of any monetary recovery plus reimbursement of expenses.

**II. Other Considerations** "The product of reasonable hours does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward

or downward." Green, 826 N.W.2d at 621 (quoting Hensley, 461 U.S. at 434). Several other factors support Plaintiffs Counsel's requested fee.

A. **The preclusion of other employment due to acceptance of the case** This type of litigation took on over two thousand hours for the combined time of the attorneys on the file.  Therefore, it is undesirable to bring these types of cases for most firms. Counsel understood the significant investment of time and resources this case would require. The decision to pursue this case, advance substantial costs, and commit substantial resources and thousands of attorney hours to obtain a successful recovery materially affected Counsel's ability to handle "other simpler and less risky matters." Krakauer v. Dish Network L.L.C., No. 14-333, 2018 WL 6305785, at *4 (M.D.N.C. Dec. 3, 2018);.  The instant case required considerable travel on behalf of the lead counsel, beyond the considerable demands of the volume of information in the case, and these demands limited counsel's ability to take on other employment.  This factor lends toward a substantial multiplier applied to the lodestar calculation.

B. **Difficulty of the Questions**

Counsel is unaware of any case in which police officers have been found liable for use of excessive force or wrongful death in case where the deceased possessed a firearm in hand when there was no video evidence of the officer's misconduct. Proving such misconduct based on forensic evidence and bystander testimony in the face of officer statements posed a difficult challenge for counsel.  The

difficulty of the evidentiary challenges lends toward a substantial multiplier to apply to the lodestar calculation as well as the attorneys' fee rates.

## C.  The Undesirability of the Case

This case was initially filed as 0:17-cv-01145-NEB-KMM on April 12, 2017. Counsel in that case lost faith and agreed to dismiss without prejudice. At least four other attorneys passed on the case before it was filed by Attorney Bosman. Attorney Bosman worked with the group Communities United Against Police Brutality as a volunteer attorney, and agreed to take on the case when other counsel could not be found before the expiration of the statute of limitations.  The undesirability of the case lends toward a substantial multiplier to the lodestar calculation.

## D.  Time Limitations

This matter was filed in Minnesota District Court on February 12, 2020, less than three weeks prior to the running of the three-year statute of limitations for a wrongful death under Minn. Stat. 573.02.  Time limitations lend toward a substantial multiplier to the lodestar calculation.

## E.  Time and Labor Required.

The work to review the files in this case was gigantic.  The investigative file produced by the Bureau of Criminal Apprehension takes up fifteen gigabytes (15 GB) of computer memory.  Each gigabyte represents 678,000 pages of text files, or 100,000 pages of emails or 15,000 image files.

(https://www.digitalwarroom.com/blog/how-many-pages-in-a-gigabyte, opened

16

August 31, 2023). These files were obtained as public data under the Minnesota Government Data Practices Act, and were not organized in any coherent fashion. Counsel had to review and organize these files, and review them again to determine a narrative and confirm that narrative with available evidence.  Visits to the scene to determine the placement and movement of the parties in the voluminous photographs were necessary.  Careful contact with potential witnesses was required.  Additional requests for data from government agencies were pursued and reviewed. Careful research into the placement of wounds as recorded in the coroner's report and the possible trajectories through the decedent took many hours.

Following the filing of the complaint and initial discovery requests, incoming documents had to be compared to the voluminous files prepared prior to filing, both to determine the existence or absence of new data, and to analyze its effects on the Plaintiff's case.  Deposition preparation was unusually onerous as well, and depositions were required for not only the officers involved in the shooting, but those who responded immediately, along with training officers and the chief of police. Trial preparation also required unusually large efforts based on the investigatory material in the case.  The unusual level of data for a wrongful death case supports both the volume of attorney fees and a substantial multiplier to the lodestar.

The factors above favor approval of the reasonable hours of the attorneys involved, at the rates quoted, along with a lodestar multiplier of 2.5x. In

17

accordance with these facts and the calculations above and attorney hours in Exhibits B, C, and D. Plaintiff requests $3,493,675.00 in attorney's fees.

## CONCLUSION

In conclusion, and for the reasons stated, Plaintiff requests that the court order judgement for the Plaintiff to include $10,000,000 in compensatory damages and $1,500,000 in punitive damages as found by the jury, but also, attorney's fees in the amount of $3,493,675, necessary costs in the amount, $49,387.22, and pre-verdict interest in the amount, $3,191,308.

Respectfully submitted.

Date: August 31, 2023

By s/Paul J. Bosman
Paul J. Bosman, #0388865
2136 Ford Parkway, #5328
Saint Paul, MN 55116
Tel: (651) 485-7046
paulbosman@cuapb.org