UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CIVIL NO.: 20-707(DSD/ECW)

Kim Diane Handy Jones, as Trustee for the
next of kin of Cordale Quinn Handy,

    Plaintiff,

v.     **ORDER**

City of St. Paul, Minnesota; St. Paul Police
Officer Mikko Norman, in his individual and
official capacities; St. Paul Police Officer
Nathaniel Younce, in his individual and
official capacities,

    Defendants.

This matter is before the court upon defendants' motion for remittitur, a new trial or to alter or amend the judgment, and to stay execution of the judgment pending appeal. Based on a review of the file, record, and proceedings herein, and for the following reasons, the motion is granted in part and denied in part as set forth below.

**BACKGROUND**

On August 2, 2023, a jury concluded that St. Paul police officer Nathaniel Younce used excessive force against Cordale Quinn Handy, plaintiff's son, causing his wrongful death. The other officer involved in the incident, Mikko Norman, was found not liable. The City of St. Paul, as Younce's employer, is vicariously liable for his actions. The jury awarded plaintiff

Kim Handy Diane Jones, as trustee for the estate of Cordale Quinn Handy, $10 million in compensatory damages and $1.5 million in punitive damages.

Defendants City of St. Paul and Nathaniel Younce now move for various forms of relief: remittitur with respect to the compensatory damages award, a new trial or an amended judgment, and a stay. The court denies the request for a new trial or amended judgment and grants the requests for remittitur and a stay.

**DISCUSSION**

**I. Remittitur**

Defendants argue that the jury's $10,000,000 compensatory damages award must be reduced as excessive, speculative, and unsupported by the evidence adduced at trial. Defendants contend that $1,000,000 in compensatory damages is an appropriate award.

If the court determines that the jury award is excessive, "it may order a new trial or condition a denial of a motion for a new trial on the plaintiff's acceptance of a remittitur." Miller v. Huron Reg. Med. Ctr., 936 F.3d 841, 846 (8th Cir. 2019) (citing Fed. R. Civ. P. 59 and 11 Charles Alan Wright et al., Federal Practice and Procedure § 2815 (3d ed. 2012)). "Remittitur is not appropriate merely because the district court would have awarded a different amount than the jury." Id. (citing Lincoln Composites, Inc. v. Firetrace USA, LLC, 825 F.3d 453, 459 (8th Cir. 2016)).

2

Instead, the court may order a remittitur when it "believes the jury's award is unreasonable on the facts." Id. (quoting Ross v. Kan. City Power & Light Co., 293 F.3d 1041, 1049 (8th Cir. 2002)). In other words, "only when the verdict is so grossly excessive as to shock the conscience of the court." Eich v. Bd. of Regents for Cent. Mo. State Univ., 350 F.3d 752, 763 (8th Cir. 2003) (citation omitted). A verdict is not grossly excessive "unless there is plain injustice or a monstrous or shocking result." Id. (citation and internal quotation marks omitted); see also DeWitt v. Schuhbauer, 177 N.W.2d 790, 795 (Minn. 1970) (holding remittitur warranted only when award "so greatly exceeds that which is adequate" that it appears to have been "awarded as the result of passion and prejudice" rather than evidence).

Minnesota law guides the court's analysis of the excessiveness of the verdict. Am. Bus. Interiors, Inc. v. Haworth, Inc., 798 F.2d 1135, 1146 (8th Cir. 1986). In Minnesota, the measure of damages for wrongful death is the pecuniary loss resulting from the death, not the value of a human life in the abstract. Ahrenholz v. Hennepin Cnty., 295 N.W.2d 645, 648 (Minn. 1980). A jury may consider a decedent's past contributions; life expectancy at the time of death; health, age, habits, talents, and success; occupation; past earnings; likely future earning capacity and prospects of bettering himself had he lived; living expenses; legal obligation to support spouse or next of kin and the

likelihood of fulfilling that obligation; reasonable funeral and necessary medical expenses; probability of paying off existing debts; future counsel, guidance, and aid; and future advice, comfort, assistance, and protection.  See Youngquist v. W. Nat. Mut. Ins. Co., 716 N.W.2d 383, 386 (Minn. Ct. App. 2006).  A jury may not consider mental anguish or grief, and damages may not be "speculative, remote, or conjectural."  Leoni v. Bemis Co., 255 N.W.2d 824, 826 (Minn. 1977).

Here, the court finds the jury's compensatory award does in fact shock the conscience given the limited facts relating to compensatory damages presented at trial.  Although the jury did not specify the basis for its damages award, the court suspects that it was largely guided by the arguments of plaintiff's counsel, who suggested that plaintiff be awarded $4,000,000 and that Handy's four siblings each receive $2,000,000, for a total of $12,000,000.  Trial Tr., ECF No. 125, at 807:3-16.  The jury ultimately returned with an award of $10,000,000.  Other than the urging of plaintiff's counsel, this award bears little relation to the relevant facts.

First, the jury was allowed to consider Handy's past financial contributions to his family.  Plaintiff admitted that other than non-monetary gifts, Handy did not financially provide for his motion or siblings.  Id. at 746:10-47:12.  As a result, this criterion has no bearing on compensatory damages in this case.  Second, the jury could consider Handy's past earnings, future

4

earning capacity, living expenses, legal obligation to support spouse or next of kin, and the probability of paying off existing debts. No evidence was submitted as to any of these criteria. See id. at 720:7-731:20; 744:1-771:15. Third, the jury took into consideration Handy's occupation as an employee of the Salvation Army. Although the evidence showed that Handy worked full time, and often did overtime, there was no testimony about his income or that Handy was sharing his income with his family. See id. at 722:21-23:6. Fourth, the jury considered Handy's talents including dry wall, house painting, and singing, but were not provided a monetary value for those talents, which are admittedly impossible to quantify. See id. at 759:2-4, 759:25-60:4. Fifth, the jury heard testimony that Handy's funeral and burial expenses totaled $15,259.56. Id. at 761:19-23. The criteria discussed so far do not come close to supporting the jury's compensatory damages award.

The most relevant criteria the jury was asked to measure, however, was the loss associated with Handy's inability to provide future counsel, guidance, aid, advice, comfort, assistance, and protection to his mother and siblings.[1] These factors are properly considered in conjunction with Handy's life expectancy at the time

---

[1] As shorthand, the court will refer to the criteria set forth above as "comfort."

5

of death and his health. As to the latter, the evidence showed that Handy was in good health and had a life expectancy of an additional 41.6 years, meaning that his next of kin has been denied his comfort for several decades depending on each family member's own life expectancy. Id. at 748:16-49:19, 7773:23-74:3. The question now is whether the jury properly quantified the value of Handy's comfort to his family.

Because the other criteria are largely irrelevant here, and the only substantiated damages amount to $15,259.56 for funeral and burial expenses, the court must determine whether plaintiff should be awarded nearly $10,000,000 for loss of comfort. Plaintiff provided evidence that Handy was a loving and engaged member of the family, who took special care of his mother and siblings. Id. at 753:2-56:13, 763:11-19. Of that the court has no doubt. Respectfully, however, the amount awarded is patently excessive. Given the meager evidence presented regarding quantifiable monetary loss, it appears that the jury was impermissibly swayed by plaintiff's understandable mental anguish and grief. Leoni, 255 N.W.2d at 826. Further, the amount is highly speculative, which is an improper basis for a damages award.[2] Id. As a result, remitter is required.

---

[2] In making this determination, the court did not consider Handy's past criminal convictions or lifestyle choices highlighted by defense counsel.

The court must now determine the amount of the remittitur. "The goal of this exercise is not for the Court to substitute its judgment for the jury's and choose an amount that it would have found suitable had it been the factfinder." Miller v. Bd. of Regents of Univ. of Minn., 402 F. Supp. 3d 568, 584 (D. Minn. 2019). "Instead, the court must remit to the maximum possible amount that the jury could reasonably have awarded." Id.

Again, the focus here is on the family's loss of comfort, which is inherently vague and subjective, and embodies a concept not readily calculable in monetary terms. There is little guidance as to how best to analyze such a loss. The court finds it most helpful to consider damages awards from similar cases. In doing so, the court is mindful that the Eighth Circuit has cautioned that "'comparisons to other jury verdicts are often not particularly helpful in claims involving noneconomic damages,' and that a district court may even abuse its discretion by relying on such comparisons where the facts ... 'are not easily comparable to the facts of other cases.'" Gonzalez v. United States, 681 F.3d 949, 953 (8th Cir. 2012) (quoting McCabe v. Parker, 608 F.3d 1068, 1080 (8th Cir. 2010)).

The most comparable jury awards are those involving excessive force leading to wrongful death, as is the case here. Two cases on point are Felder v. King, No. 07-4920, 2011 WL 2148315 (D. Minn. May 31, 2011) and Estate of Snyder v. Julian, 789 F.3d 883 (8th

7

Cir. 2015), in which the jury awarded approximately $1,000,000 in compensatory damages.[3] After reviewing the cases and the evidence adduced at trial, the court concludes that the maximum amount of compensatory damages the jury could have awarded in this case is $2,500,000. This determination is based on the compelling testimony about Handy's steadfast comfort to his family, which they will now be without for decades. This testimony is what raises this case above those that are otherwise comparable.

Because remittitur is necessary here, plaintiff has the option of agreeing to the remittitur amount or declining to remit and proceeding with a new trial on the issue of compensatory damages.

**II.  New Trial**

Defendants argue that they are entitled to a new trial judgment based on allegedly incorrect evidentiary rulings, improper closing arguments by plaintiff's counsel, improper inclusion of a punitive damages instruction relating to the wrongful death claim, and the jury's inconsistent liability verdict.

---

[3] In support of her claim that the jury's award is reasonable, plaintiff cites to inapposite cases involving the deaths of parents and children and civil settlements that do not assist the court's analysis. See ECF No. 148, 21-23.

8

The decision to grant a new trial under Federal Rule of Civil Procedure 59(a) is committed to the discretion of the district court, which has "the benefit of hearing testimony and observing the demeanor of witnesses throughout the trial." Jones v. TEK Indus., Inc., 319 F.3d 355, 358 (8th Cir. 2003). "A new trial is required only when necessary to avoid a miscarriage of justice." Gearin v. Wal-Mart Stores, Inc., 53 F.3d 216, 219 (8th Cir. 1995) (citation omitted).

### A. Evidentiary Rulings

The mere existence of evidentiary errors is not a sufficient basis for a new trial. Rather, a new trial is appropriate under Rule 59 only when "an evidentiary ruling was so prejudicial as to require a new trial which would be likely to produce a different result." O'Dell v. Hercules, Inc., 904 F.2d 1194, 1200 (8th Cir. 1990); see also Pointer v. DART, 417 F.3d 819, 822 (8th Cir. 2005) (holding that an evidentiary error warrants a new trial when it affects a party's "substantial rights"). The court concludes that a new trial is not warranted, as no error was committed that could have prejudiced the substantial rights of defendants.

Defendants argue that the court erred in excluding certain testimony and evidence about the drugs in Handy's system and in his apartment at the time of his death. They contend that the court's decision to limit such evidence stymied their ability to cross-examine Handy's girlfriend about her knowledge of the drugs.

9

The court is unpersuaded. The trial included photographic and testimonial evidence regarding the drugs Handy took and had access to the night of the incident. What his girlfriend knew of those drugs is largely irrelevant outside of bearing on her credibility. Defense counsel had adequate opportunity to cross examine her using photographs from the scene to test her credibility. Thus, the court's decision to disallow certain evidence and testimony regarding the drugs was not in error.

Defendants next argue that the court erred in excluding evidence of Handy's ongoing criminal cases, which were unresolved at the time of his death. Defendants contend that excluding such evidence resulted in a larger damages award, because it prevented the jury from fully appreciating Handy's criminal tendencies. This argument is unpersuasive. The court excluded this evidence because Handy had not been convicted of the pending charges. In other words, he was presumed innocent of those charges and shall remain so given his death. Allowing such evidence in the record would have prejudiced plaintiff far more than any theoretical prejudice to defendants.

Defendants also argue that the court should have allowed evidence of a witness's misdemeanor shoplifting convictions, which would have undermined her credibility. Having presided over the trial, the court is satisfied that defense counsel had ample opportunity to explore the witness's credibility given her uneven

10

demeanor on the stand and inconsistent statements relating to the case.

According to defendants, the court erred in excluding evidence of the officer's subjective opinions and fears. The court did so consistent with the law. Defendants were still permitted to discuss their observations and the basis for their actions. As such, the court's ruling was not in error.

Defendants lastly argue that the court should not have prevented their psychopharmacologist from testifying about the effect N-Ethylpentylone had on Handy the night of his death. She was permitted to discuss the general effects of that drug and she testified that Handy's behavior was consistent with its use. The court fails to see how the limitation placed on the witness prejudiced defendants' substantial rights, even if in error.

**B.  Closing Arguments**

"When a new trial motion is based on improper closing arguments, a new trial should be granted only if the statements are plainly unwarranted and clearly injurious and cause prejudice to the opposing party and unfairly influence a jury's verdict." Smiley v. Gary Crossley Ford, Inc., 859 F.3d 545, 556 (8th Cir. 2017) (citations and quotation marks omitted).

The court recalls closing arguments well having presided over the trial, and has carefully reviewed the transcript in connection with this motion. Although arguments were heated on both sides,

11

the court cannot conclude that the statements made by plaintiff's counsel in particular meet the high bar needed to compel the court to order a new trial.

**C.   Punitive Damages Instruction**

According to defendants, the court erred in including a punitive damages instruction as to the state-law wrongful death claim, because plaintiff never moved to amend the complaint to include punitive damages as is required under Minnesota law. See Minn. Stat. § 549.191 ("Upon commencement of a civil action, the complaint must not seek punitive damages.  After filing the suit a party may make a motion to amend the pleadings to claim punitive damages.").  But plaintiff was not required to move to amend the complaint to include punitive damages in this case.  This court has held that Rule 8(a) of the Federal Rules of Civil Procedure, which allows a party to request punitive damages in its complaint, applies to pleading punitive damages under state law in federal court.  Am. Achievement Corp. v. Jostens, Inc., 622 F. Sup. 3d 749, 766 (D. Minn. 2022); see also Speed RMG Partners, LLC v. Arctic Cat Sales Inc., No. 20-CV-609, 2021 WL 7286933, at *3 (D. Minn. Aug. 6, 2021) (citing Shady Grove Ortho. Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393 (2010)).  The court is unpersuaded that it should reach a different conclusion simply because the complaint was removed from state court – in this case the same day plaintiff filed her complaint.  See ECF Nos. 1, 2.  Once the case

was removed, it became a federal case subject to the Federal Rules of Civil Procedure.

### D.   Liability Verdict

Defendants contend that a new trial is warranted because the jury found one officer liable and the other officer not liable for Handy's death.  According to defendants, there was no proper way for the jury to have reached this inconsistent verdict given that both officers shot Handy within moments of each other.

"To be inconsistent, a jury verdict must reach contradictory factual findings."  Lowry ex rel. Crow v. Watson Chapel Sch. Dist., 540 F.3d 752, 762 (8th Cir. 2008).  The court does not find the verdict to be inconsistent here.  The evidence revealed that that officer Younce fired first and Officer Norman fired only after Younce did so.  Based on this evidence, the jury could have reasonably concluded – and apparently did conclude – that Younce was solely culpable.  The court is unconvinced this determination was contradictory.

### III. Stay of Execution

Defendants ask the court to stay execution of the judgment pending any decision on appeal.  Plaintiff does not object to this request, but asks the court to impose a bond or other requirement in order to secure the judgment.  The court agrees that a stay of execution is warranted.  It will not impose a bond or other security, however, given that defendants include the City of St.

Paul, which – by its own admission - is ready, willing, and able to pay the judgment if and when it is finalized on appeal.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. The motion for remittitur, a new trial or to alter or amend the judgment, and to stay execution of the judgment pending appeal [ECF No. 137] is granted in part and denied in part;

2. The court grants the motion for remittitur;

3. The court denies the motion for a new trial or to alter or amend the judgment;

4. The court grants the motion to stay execution of the judgment;

5. On or before March 1, 2024, plaintiff must file a letter with the court disclosing whether she will agree to remit the jury's award of compensatory damages from $10 million to $2.5 million. If plaintiff agrees to remit, the court will enter judgment. If plaintiff declines to remit, the court will schedule a new trial on the issue of compensatory damages;

6. The jury's compensatory damages award of $10,000,000 remains in place stands pending plaintiff's decision; and

7. Execution of the judgment in this action is stayed pending appeal.

Dated: February 8, 2024         s/David S. Doty
                                David S. Doty, Judge
                                United States District Court

15