**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| KIM DIANE HANDY JONES, *as Trustee for the next of kin of Cordale Quinn Handy*, | Civil No. 20-707 (JRT/ECW) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S POST-TRIAL MOTIONS** |
| CITY OF ST. PAUL, MINNESOTA, and NATHANIEL YOUNCE, *St. Paul Police Officer, in his individual and official capacities*, | |
| Defendants. | |

Kenneth R. White, **LAW OFFICE OF KENNETH R. WHITE, P.C.**, 212 Madison Avenue, Suite 200, Mankato, MN 56001; Kevin William O'Connor, **O'CONNOR LAW FIRM, LTD.**, 19 South LaSalle, Suite 1400, Chicago, IL 60603; and Paul J. Bosman, 2136 Ford Parkway, Suite 5328, Saint Paul, MN 55116**,** for Plaintiff.

Anthony G. Edwards, **SAINT PAUL CITY ATTORNEY'S OFFICE, CIVIL LITIGATION DIVISION**, 15 West Kellogg Boulevard, 750 City Hall, Saint Paul, MN 55102; and Stephanie A. Angolkar, **IVERSON REUVERS**, 9321 Ensign Avenue South, Bloomington, MN 55438, for Defendants.

Plaintiff Kim Diane Handy Jones, as trustee for the next of kin of Cordale Quinn Handy, initiated this action after Handy was shot and killed in 2017 by St. Paul police officers. At the initial trial, a jury found St. Paul police officer Nathaniel Younce liable and awarded $11.5 million in damages. U.S. District Judge David S. Doty remitted the compensatory damages to $2.5 million, leaving in place the jury's finding on liability and

a $1.5 million punitive damages award. Handy Jones rejected the remittitur amount and proceeded to a second trial on compensatory damages. The second jury awarded $3.25 million in compensatory damages. Handy Jones then filed two post-trial motions, in which she seeks reinstatement of the original compensatory damages award or alternatively a new trial, as well as attorney's fees, reimbursement of costs, and prejudgment interest.

The Court will deny Handy Jones's motion to reinstate the first jury's award or alternatively a new trial, but the Court will award attorney's fees in the amount of $1,738,540.88, costs in the amount of $480, and prejudgment interest in the amount of $490,132.33.

## BACKGROUND

Handy Jones initiated this action against the City of St. Paul and St. Paul police officers after her son, Cordale Quinn Handy, was shot and killed by police officers in 2017. The action progressed to a bifurcated trial on liability and damages. *See Handy Jones as Tr. for Handy v. City of St. Paul*, No. 20-707, 2025 WL 26639, at *1 (D. Minn. Jan. 3, 2025). The jury found Officer Nathaniel Younce liable and awarded $10 million in compensatory damages and $1.5 million in punitive damages. *Id.*

Officer Younce and the City of St. Paul, which is vicariously liable for Younce's actions, moved for remittitur on the $10 million compensatory damage award. *Handy Jones as Tr. for Handy v. City of St. Paul*, 715 F. Supp. 3d 1166, 1169 (D. Minn. 2024). Judge Doty granted the motion for remittitur because he found that the maximum

compensatory damages the jury could have awarded was $2.5 million. *Id.* at 1170, 1172, 1175.

In considering the remittitur amount, Handy Jones asked whether she could assert a new category of compensatory damages on retrial, namely for the pain and suffering that Handy may have suffered from the injuries he sustained before his death, as permitted under the recently amended Minnesota Statute § 573.02, subdivision 1. *Handy Jones as Tr. for Handy*, 2025 WL 26639, at *1. Because Handy Jones could have presented that evidence in the first trial, Judge Doty responded that in the event of a new trial, new evidence would not be permitted. *Id.* Judge Doty also rejected Handy Jones's request for attorney's fees and prejudgment interest. (Order Den. Mot. for Att'y Fees and Prejudgment Interest at 4, Oct. 3, 2023, Docket No. 136.) The Clerk of Court taxed only $480 of the $49,467.22 that Handy Jones claimed in costs. (Cost J. at 1, Sept. 19, 2023, Docket No. 135.)

Handy Jones rejected remittitur and elected to proceed with a new trial on compensatory damages. *Handy Jones as Tr. for Handy*, 2025 WL 26639, at *1. The case was then reassigned to this Court. *Id.* On retrial, the jury awarded $3.25 million in compensatory damages: $1 million for damages sustained until trial and $2.25 million for future damages. (2nd Jury Verdict at 1–2, Jan. 13, 2025, Docket No. 201.)

Handy Jones moved again for attorney's fees and costs and prejudgment interest. (2nd Mot. for Att'y Fees, Jan. 27, 2025, Docket No. 208.) Handy Jones seeks $4,445,837 in

attorney's fees, $49,387.22 in costs, and $562,082 in prejudgment interest. (Mem. Supp. 2nd Mot. for Att'y Fees at 20, Jan. 27, 2025, Docket No. 208.) Handy Jones also filed a motion to reinstate the original jury award, or in the alternative for a new trial. (Mot. to Alter/Amend/Correct Other Orders, Mar. 4, 2025, Docket No. 220.)

**DISCUSSION**

**I.    REINSTATEMENT OF ORIGINAL JURY AWARD**

Handy Jones asks the Court to reinstate the original $10 million compensatory damages award. Defendants argue that reinstating the prior award would be improper additur and instead Handy Jones should raise her arguments on appeal.

The Court must first define Handy Jones's request and determine whether that request is properly before the Court. In her motion, Handy Jones requests relief pursuant to Federal Rule of Civil Procedure 59, which allows a court to alter or amend a judgment. Fed. R. Civ. P. 59(e). But in her memorandum, Handy Jones asks the Court to effectively vacate the second jury award and Judge Doty's remittitur order to reinstate the original jury award. Indeed, Handy Jones clearly seeks relief from Judge Doty's remittitur order, even describing it as a motion for reconsideration. It is unclear whether this Court would have been able to reconsider the remittitur order before the second trial on damages. *See First Union Nat'l Bank v. Pictet Overseas Tr. Corp.*, 477 F.3d 616, 620 (8th Cir. 2007) (describing a court's ability to reconsider interlocutory orders); *Herold v. Burlington N., Inc.*, 761 F.2d 1241, 1249 (8th Cir. 1985) (defining an order granting a new trial after refusing remittitur as interlocutory). But Handy Jones did not ask the Court to file a

motion for reconsideration after Judge Doty recused and the case was reassigned. Instead, the case progressed to a second jury trial on damages. Now that the second jury returned a damages award that was less than the original award (but more than the remittitur award), Handy Jones seeks to reinstate the original jury award.

The Court is unaware of any other case that has provided similar relief under Rule 59(e). And though the Court is not convinced that reinstating the original jury award would constitute additur, reinstating the award to avoid the second jury's verdict and attain a higher, prior jury award is unquestionably unorthodox. Accordingly, the Court will not "substitute its judgment for that" of the second jury regarding the proper damages award, *Taylor v. Otter Tail Corp.*, 484 F.3d 1016, 1020 (8th Cir. 2007), either through reconsideration of Judge Doty's remittitur order or through reinstatement of the original jury award. The Court will therefore deny Handy Jones's motion to alter or amend the judgment to the extent she seeks reconsideration of the remittitur order or reinstatement of the original jury award.

## II.    MOTION FOR NEW TRIAL

In the alternative, Handy Jones seeks a new trial on damages, alleging that the cumulative effect of certain prejudicial errors tainted her right to a fair trial.

The Court has discretion to grant a motion for a new trial "on all or some of the issues." Fed. R. Civ. P. 59(a)(1); *Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996). "A new trial is appropriate when the first trial, through a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial, resulted in a miscarriage of

justice." *Gray*, 86 F.3d at 1480.  Legal errors warrant a new trial where they "had a substantial influence on the jury's verdict." *Littleton v. McNeely*, 562 F.3d 880, 888 (8th Cir. 2009) (quoting *Harris v. Chand*, 506 F.3d 1135, 1139 (8th Cir. 2007)).

Handy Jones alleges five errors that require a new trial:  (1) Defendants questioned Handy Jones about gang affiliation without a good faith basis, (2) Defendants played the prejudicial video in Handy's apartment from the night he died without foundation, (3) Defendants made improper statements during closing arguments, (4) the jury instructions were not properly tailored to the facts of the case, and (5) Handy Jones should have been allowed to seek conscious pain and suffering damages.  The Court will take each claim in turn

### A.  Gang Affiliation

During trial, Handy Jones testified on direct examination that her son had a criminal past, including an attempted carjacking conviction.  Handy Jones characterized that conviction as Handy getting "in some trouble related to some of his friends."  (2nd Trial Tr. at 317:23–25, Feb. 28, 2025, Docket No. 218.)  On cross examination, Defendants then asked about gang affiliation, which the Court allowed over Handy Jones's objection. Defendants submitted to the Court two press releases and one article[1] that listed Handy

---

[1] Specifically, Defendants provided two press releases from then United States Representative Mark Kirk and an article from the *Daily Herald*.  The press releases detailed the investigatory efforts of local law enforcement and Alcohol, Tobacco, Firearms and Explosives agents, as well as arrests of suspected gang members.  The *Daily Herald* article describes an arrest

as being affiliated with a specific gang to show their good faith basis for the questioning. The documents were not admitted into evidence. Handy Jones renewed her objection to the questions and requested a curative instruction at the end of trial, but the Court determined that a curative instruction was unnecessary.

Now, Handy Jones argues that Defendants' questioning was improper because Defendants had no good faith basis for asking questions about Handy's alleged gang affiliation and used those questions to inflame the jury.

"Improper questions that place prejudicial information before the jury may entitle the aggrieved party to a new trial." *Long v. Cottrell, Inc.*, 265 F.3d 663, 667 (8th Cir. 2001). The Court has broad discretion in determining whether an improper question was "so prejudicial as to warrant a new trial." *McBryde v. Carey Lumber Co.*, 819 F.2d 185, 188 (8th Cir. 1987).

Handy Jones provided some evidence that weakens Defendants' good faith basis for cross examining Handy Jones on Handy's gang affiliation, including deposition testimony by herself and Handy's former girlfriend that denied Handy's affiliation with any gang. But that deposition testimony alone is insufficient to overcome the good faith basis established by the other documents presented to the Court. Furthermore, even if the questions were improper, Handy Jones has not met her burden to show that the jury

---

of Handy and references the gang information from the press releases. For completeness and clarity, the Court will order these documents to be entered as sealed court trial exhibits.

verdict was prejudicially influenced from these questions. *See Coterel v. Dorel Juvenile Grp., Inc.*, 827 F.3d 804, 807 (8th Cir. 2016) (explaining that even if the Court determines an evidentiary error occurred, the movant must also demonstrate that the error "prejudicially influenced the outcome of the trial").

Handy Jones assumes that because Defendants asked no gang affiliation questions during the first trial, where a jury rendered a substantially larger verdict, she was prejudiced in the second trial as demonstrated by the lower damages amount. But the evidence introduced at the two trials differed in several material ways, including testimony during the second trial from four additional Plaintiff's witnesses. So, any assumption about the impact of the gang affiliation questions would be speculative, and speculation is insufficient to establish prejudicial influence. *Regions Bank v. BMW N. Am., Inc.*, 406 F.3d 978, 980–81 (8th Cir. 2005). Therefore, despite the Court's hesitation about Defendants' good faith basis, because Handy Jones has failed to show prejudice from this questioning, the Court will not grant a new trial on this basis.

### B. Video Evidence

At the beginning of Defendants' case, Defendants played a video depicting Handy's behavior the night he was killed. This video was the subject of a pre-trial motion in limine, where the Court determined it was relevant and not substantially outweighed by any unfair prejudice. (Mem. Op. & Order at 2, Jan. 7, 2025, Docket No. 194.) Handy Jones now argues that the admission of the video warrants a new trial because the video was

prejudicial, inflammatory, and cumulative, and that it was admitted without proper foundation.

The Court finds that the video was not unfairly prejudicial or inflammatory. The jury was tasked with evaluating, among other things, the decedent's life expectancy, habits and health, and counsel and comfort he provided to his next of kins. A video that depicts the decedent's behavior just before he was killed is relevant to many of those factors. And while the video was certainly difficult to watch and may have been detrimental to Handy Jones's case, the rules of evidence do not exclude detrimental or disturbing evidence, but rather evidence that is unfairly prejudicial. *United States v. Fechner*, 952 F.3d 954, 958 (8th Cir. 2020). Here, the video provided the jury with additional context to evaluate the relevant factors in assessing wrongful death damages. It was not unfairly prejudicial.

The Court is also not convinced that the video confused or misled the jury. Handy Jones argues that the video invited speculation about how Handy was killed and whether he was responsible for his own death. But the Court provided the jury with a specific statement explaining that a previous jury had determined that Handy was wrongfully killed at the hands of Defendant Nathaniel Younce of the St. Paul Police Department. (Final Jury Instrs. at 13, Jan. 13, 2025, Docket No. 199.) The jury was further instructed that the only issue in this case was damages, and that liability had already been determined. (*Id.* at 14.) The Court presumes that juries follow the Court's instructions,

*CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009), and Handy Jones has provided nothing more than conjecture to overcome that presumption.

Finally, the Court finds that the video did not lack proper foundation. Handy Jones argues that the video was admitted without proper foundation because instead of calling a witness to introduce the video, defense counsel themselves provided the introduction. The video was recorded by Handy's then-girlfriend who was on Handy Jones's witness list but ultimately did not testify at the second trial. Yet the video was admitted during the first trial, where his then-girlfriend did testify, without any foundational objections. (1st Pre-Trial Tr. at 9:17–18, Aug. 14, 2023, Docket No. 120.) Indeed, Handy's then-girlfriend testified during the first trial that she made the video recording on the night Handy was killed. (1st Trial Tr. at 60:14–17, Aug. 14, 2023, Docket No. 121.) Courts require foundation to ensure that evidence has been authenticated. Fed. R. Evid. 901(a). Here, the video was authenticated during the first trial, so the Court is satisfied that despite Handy's then-girlfriend not testifying during the second trial, the evidence remained authentic and was therefore properly admitted in the second trial. Defendants also did not offer improper foundational testimony. Instead, Defendants provided the jury with an introduction to the video at the request of the Court.

In sum, the Court finds that the video was properly admitted into evidence in the second trial and its admission does not warrant a new trial.

### C. Closing Argument

Handy Jones argues that Defendants made three improper statements during closing arguments that misled the jury and substantially prejudiced her: a golden rule argument, a per diem argument, and an argument that Handy was responsible for his own death.

A new trial should be granted only when improper closing arguments are "plainly unwarranted and clearly injurious" and "cause prejudice to the opposing party and unfairly influence a jury's verdict." *Harrison v. Purdy Bros. Trucking Co.*, 312 F.3d 346, 351 (8th Cir. 2002) (quotation omitted). In evaluating a motion for a new trial based on improper closing statements, courts should consider (1) whether the statements were "minor aberrations made in passing," (2) whether any "specific curative action" was taken by the court, (3) "the size of the damage award," and (4) the "weight of the evidence." *Ventura v. Kyle*, 825 F.3d 876, 885 (8th Cir. 2016) (quotation omitted). Courts must also read statements within the context of the entire arguments. *United States v. Levering*, 431 F.3d 289, 293 (8th Cir. 2005).

### 1.    Golden Rule Argument

Handy Jones argues that several statements in Defendants' closing remarks constituted golden rule arguments. Specifically, Handy Jones cites to three statements: (1) "Ask yourself whether the person that you saw in that video was someone you would look to for counsel and aid," (2) "He was probably not a person that we would look to to

provide [counsel, guidance, and aid] for our lives," and (3) "[H]is counsel would not necessarily be counsel we would want to rely on." (2ⁿᵈ Trial Tr. at 387:11–12, 393:20–24.)

A golden rule argument asks the jury to put itself in the position of a party and is "universally condemned because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Lovett ex rel. Lovett v. Union Pac. R.R. Co.*, 201 F.3d 1074, 1083 (8ᵗʰ Cir. 2000).

Taken in isolation, the statements cited by Handy Jones appear to invoke the golden rule. But the Court is specifically instructed to consider statements within the context of the entire argument. *Levering*, 431 F.3d at 293. Considering these statements within the context of the entire closing argument indicates that the statements were not golden rule statements. Instead, these statements asked the jury to evaluate the credibility of Handy Jones's witnesses in assessing a reasonable damages award. For example, just before one of the alleged golden rule statements, Defendants stated, "it simply doesn't seem to be supported by the facts." (2ⁿᵈ Trial Tr. at 387:10–11.) As such, the statements were not improper golden rule arguments.

### 2.    Per Diem Argument

Handy Jones next argues that Defendants' per diem arguments during closing arguments deprived Handy Jones of a fair trial.

Per diem arguments ask the jury to quantify damages by assigning a value to hours or days and multiplying that value by the decedent's anticipated life expectancy. *See, e.g.*, *Vanskike v. ACF Indus., Inc.*, 665 F.2d 188, 210 (8ᵗʰ Cir. 1981). *See also Ramstad v.*

*Lear Siegler Diversified Holdings Corp.*, 836 F. Supp. 1511, 1522 (D. Minn. 1993) ("Per diem arguments advise the jury to quantify pain and suffering by affixing an amount of damages to each hour or day and multiplying that amount by the number of hours or days left in a plaintiff's life.").  Per diem arguments in closing remarks are not forbidden by the Eighth Circuit so long as the "arguments are carefully controlled by the district court."  *Manning v. Lunda Constr. Co.*, 953 F.2d 1090, 1093 (8th Cir. 1992) (quoting *Vanskike*, 665 F.2d at 211).

Here, Defendants did not make a per diem argument.  Defendants did contextualize their calculation of damages in the value of the gifts that Handy gave his family members over time.  But that was but a starting point.  Then Defendants urged the jury to take the value from the gifts and increase it accordingly to account for the intangibles.  Defendants did not make a per diem argument, let alone an improper one.

### 3.    Liability Argument

Handy Jones also suggests that Defendants improperly argued that Handy was responsible for his own death, in direct violation of the Court's motion in limine ruling excluding such evidence.  Specifically, Handy Jones takes issue with the statement "It seems to me that [Handy] needed his mother's counsel and guidance; and [we are] sure if [Handy] had followed it better, perhaps we wouldn't be in this situation."  (2nd Trial Tr. at 386:21–23.)

The Court agrees that the statement was improper.  Although the Court does not believe the statement was made with any intent to suggest that Handy was responsible

for his own death, that inference is easy to make. Within the context of the entire closing argument, though, this statement is a minor aberration. *Ventura*, 825 F.3d at 885. Defendants did not make any explicit arguments on liability, and they did not dwell on or emphasize the improper statement. Further, there is no evidence of prejudice from this one improper statement during Defendants' closing argument. *Harrison*, 312 F.3d at 351. This improper statement is thus insufficient to warrant a new trial.

### D. Jury Instructions

Handy Jones argues that the jury instructions on damages erroneously delineated all twelve factors to consider in calculating damages instead of narrowly tailoring the analysis to the specific, non-economic damages that Handy Jones sought.

District courts have wide discretion in crafting jury instructions. *Zutz v. Case Corp.*, 422 F.3d 764, 773 (8th Cir. 2005). Jury instructions must, "taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submit[] the issues in the case to the jury." *Horstmyer v. Black & Decker, (U.S.), Inc.*, 151 F.3d 765, 771 (8th Cir. 1998) (citation omitted). A new trial for errors in jury instructions is only warranted where "the errors misled the jury or had a probable effect on the jury's verdict." *Nicholson v. Biomet, Inc.*, 46 F.4th 757, 762 (8th Cir. 2022) (quotation omitted).

Handy Jones does not dispute that the Court's instruction was legally correct. Instead, she contends that because she sought only non-economic damages, apart from funeral expenses, it was misleading to instruct the jury on all twelve factors to consider

for wrongful death damages.  This error, Handy Jones argues, allowed Defendants to make improper arguments about inapplicable damages categories.

The Court fails to see how including all the factors that may contribute to wrongful death damages confused the jury in any way.  The instruction merely showed the jury what it should consider, and not consider, in assessing damages.  The Court did not instruct the jury that any category of damages was worth more, or that an award under one category must reduce the award under any other.  Handy Jones remained the master of her complaint and theory of recovery.  The fact that Defendants highlighted Handy Jones's strategy to seek only non-economic damages does not render the instruction misleading.  Because Handy Jones has not shown how the jury instructions on damages misled the jury, the Court will not grant a new trial on this basis.

### E.  Conscious Pain and Suffering Damages

Handy Jones lastly argues that the Court should have allowed her to assert conscious pain and suffering damages.  Handy Jones sought the additional category of damages before the second trial began, but the Court denied her request, citing the law of the case.  *Handy Jones as Tr. for Handy*, 2025 WL 26639, at *2.  Handy Jones now alleges that before the first trial began, she was unaware of the change in Minnesota law that allowed conscious pain and suffering damages in wrongful death cases, so the Court's denial of her pretrial motion to amend the pleadings was erroneous.  However, Handy Jones explicitly indicated that she "did not bring a Motion seeking to amend the complaint prior to [the first] trial," because "[t]o do so would likely have delayed the trial, if the

-15-

Motion had been granted, or resulted in the motion being rejected." (Mem. Supp. Mot. to Alter/Amend/Suppl. Pleadings at 4–5, Sept. 13, 2024, Docket No. 171.) Accordingly, Handy Jones has not presented any information that would alter the Court's prior decision to deny her motion to amend the pleadings to assert this new category of damages.

*    *    *

Handy Jones argues that the cumulative effect of the alleged errors requires a new trial. A multitude of errors can require a new trial if the cumulative effect affects a party's "substantial rights," meaning that they "affected the judgment." *Krekelberg v. City of Minneapolis*, 991 F.3d 949, 959–60 (8th Cir. 2021) (quotation omitted). Here, the Court identified only one improper statement, but in the Court's view, that improper statement did not prejudice Handy Jones. Accordingly, there is no cumulative effect that warrants a new trial. The Court will therefore deny Handy Jones's motion to alter or amend the judgment to the extent she seeks alternative relief in the form of a new trial.

## III.    ATTORNEY'S FEES AND COSTS

Handy Jones seeks attorney's fees and costs under 42 U.S.C. § 1988. Handy Jones sought attorney's fees and costs after the first trial, but the Court denied the request after determining that the amount provided under the contingency agreement adequately compensated the attorneys. *Handy Jones as Tr. for Handy v. City of St. Paul*, No. 20-707, 2023 WL 6441393, at *1–2 (D. Minn. Oct. 3, 2023). Defendants rely on the law of the case to argue that the Court should not disturb the prior attorney's fees order.

-16-

The law of the case does not require the Court to maintain the earlier rejection of attorney's fees.  The law of the case instructs the Court to maintain prior decisions unless they are "clearly erroneous and would work a manifest injustice."  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quotation omitted).  The Court denied Handy Jones's request for fees after determining that Handy Jones's counsel would be adequately compensated by the contingency agreement.  *Handy Jones as Tr. for Handy*, 2023 WL 6441393, at *1–2.  But 42 U.S.C. § 1988 allows courts to award attorney's fees to the **prevailing party**.  So, a request for attorney's fees under § 1988 evaluates "what the losing defendant must pay, not what the prevailing party must pay his lawyer."  *Venegas v. Mitchell*, 495 U.S. 82, 90 (1990).  "[A] plaintiff's recovery will not be reduced by what he must pay his counsel."  *Blanchard v. Bergeron*, 489 U.S 87, 94 (1989); *accord Quigley v. Winter*, 598 F.3d 938, 956 (8ᵗʰ Cir. 2010) (awarding statutory fees despite the presence of a contingency agreement).  Accordingly, although the decision was logical, this Court will find that it was clearly erroneous to deny the motion for statutory fees on the basis that the attorneys would be adequately compensated by the contingency fee agreement.  The law of the case does not preclude the Court from evaluating the § 1988 fee request.

The Court may award statutory fees, but the fees must still be reasonable, 42 U.S.C. § 1988, and counsel cannot recover both a statutory award and contingency fees, *see Ross v. Douglas County*, 244 F.3d 620, 622 (8ᵗʰ Cir. 2001).  If the statutory fee award is less

than the contingency fee, counsel is entitled to the difference between the statutory and contingency fee awards. *Id.*

### A. Attorney's Fees

Handy Jones seeks $4,445,837 in attorney's fees and $49,387.22 in costs. These fees are based on hourly rates that range from $350 to $750 for a total of 2,785.1 hours. Handy Jones also argues that a 2.5x upward multiplier is appropriate given the particulars of this case.

A prevailing party seeking an award of attorney's fees must provide evidence to support the reasonableness of the fees, both as to the hourly rates claimed and the hours worked. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Hours that are "excessive, redundant, or otherwise unnecessary" should be excluded. *Id.* at 434; *see also Beckler v. Rent Recovery Sols., LLC*, 83 F.4th 693, 695 (8th Cir. 2023). A district court has substantial discretion when determining the reasonableness of attorney's fees. *Hensley*, 461 U.S. at 437; *Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1084–85 (8th Cir. 2000).

In the Eighth Circuit, "courts typically use the 'lodestar' method for calculating a reasonable award." *Paris Sch. Dist. v. Harter*, 894 F.3d 885, 889 (8th Cir. 2018). To calculate the lodestar, courts multiply "the number of hours reasonably expended by the reasonable hourly rate." *Beckler*, 83 F.4th at 695 (citation omitted). The party seeking attorney's fees has the burden to establish entitlement to an award with documentation that addresses the nature of the work and the appropriateness of the hourly rates and

hours expended. *See Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley*, 461 U.S. at 437).

Defendants argue that the hourly rates are unsupported, that the billing entries are vague and reflect overbilled or unbillable time, that Handy Jones was only partially successful, and that no multiplier is warranted. The Court will take each argument in turn.

### 1. Hourly Rates

The Court must first determine if the claimed hourly rates are reasonable.[2] In determining whether hourly rates are reasonable, the Eighth Circuit instructs courts to ensure that the requested rates are in line with those prevailing in the community for "similar services by lawyers of reasonably comparable skill, experience, and reputation." *McDonald v. Armontrout*, 860 F.2d 1456, 1458–59 (8th Cir. 1988) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). Courts give considerable attention to counsel's individual characteristics. *Id.* at 1459. Specifically, "the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates." *Hendrickson v. Branstad*, 934 F.2d 158, 164 (8th Cir. 1991) (citation omitted).

---

[2] Defendants do not dispute that Kenneth White's hourly rate of $390 is reasonable. $390 per hour for White is surely reasonable given his approximately forty years of legal experience. (Aff. of Kenneth White at 18, Jan. 27, 2025, Docket No. 208-6.); *Minn. Voters All. v. City of St. Paul*, No. 19-0358, 2021 WL 1100901, at *3 (D. Minn. Mar. 23, 2021) (collecting cases that deemed fees over $400 per hour reasonable for attorneys with over twenty years of experience).

a.    Kevin O'Connor

As a starting point, Handy Jones urges the Court to apply a national market rate to Kevin O'Connor's fees.  Handy Jones seems to argue that O'Connor's national civil rights litigation practice warrants a national market rate.  But Handy Jones relies on class action Employee Retirement Income Security Act cases to support her national market argument.  The Court is not convinced that a national market rate should apply, so it will apply Minnesota as the relevant community.  *See Lynch v. City of Minneapolis*, No. 14-4673, 2016 WL 4357497, at \*2 (D. Minn. Aug. 15, 2016) (applying the Twin Cities market rate to civil rights action initiated in the District of Minnesota).

Handy Jones requests an hourly rate of $750 for O'Connor.  Defendants argue that the rate is unreasonable and that the Court should instead apply a rate of $450 per hour.

The Court finds insufficient support for an hourly rate of $750 and instead will apply a rate of $550 per hour.  O'Connor provides very little support for his hourly rate to the Court besides his own affidavit and that of one other attorney, which indicate O'Connor has thirty years of legal experience, has national litigation experience in § 1983 cases, and has tried roughly eighty trials to verdict.  (2nd Aff. of Kevin W. O'Connor ¶¶ 2–3, 5, Jan. 27, 2025, Docket No. 208-4; Aff. of Scott A. Nelson ¶ 9, Jan. 27, 2025, Docket No. 208-9.)  The case cited by Handy Jones, a 2008 Hennepin County case that the Court could not access, is entirely unhelpful.  But courts in Minnesota have routinely accepted rates well above the suggested $450 per hour.  *See Minn. Voters All. v. City of St. Paul*, No. 19-0358, 2021 WL 1100901, at \*3 (D. Minn. Mar. 23, 2021) (identifying cases where courts

have deemed fees for civil rights actions reasonable up to $600 per hour). A rate of $550 per hour adequately represents O'Connor's experience and skills.

### b.    Paul Bosman

Handy Jones seeks an hourly rate of $550 for Paul Bosman, but the Court finds a rate of $450 per hour is reasonable. Bosman only began litigating civil rights actions five years ago, though, he has seventeen years of litigation experience. (Aff. of Paul Bosman ¶¶ 2, 4–5, Jan. 27, 2025, Docket No. 208-2.) While Bosman's hourly rate was supported by an affidavit of a Minnesota civil litigator, (Decl. of Jeff Storms ¶¶ 4, 10–11, Jan. 27, 2025, Docket No. 208-9), $550 per hour represents a rate that is more reasonable for an attorney with several more years of experience. *Minn. Voters All.*, 2021 WL 1100901, at *3 (collecting cases that deemed rates around $500 per hour to be reasonable for attorneys with twenty plus years of experience). The Court will reduce Bosman's rate to $450 per hour.

### c.    Brianna Long

The Court finds that Handy Jones's request of $350 per hour for work done by Brianna Long is excessive and will instead apply a rate of $275 per hour. Long has just over five years of legal experience, with only two in civil rights litigation. (Aff. of Brianna H. Long ¶¶ 2–4, Jan. 27, 2025, Docket No. 208-7.) That rate may be appropriate for most associates of like experience. *Cf. Eclipse Sportswire v. Sports Moments Plus, LLC*, No. 21-1638, 2022 WL 2841405, at *4 (D. Minn. July 19, 2022) (deeming a fee of $300 per hour reasonable for an associate with two years of experience). But Long never filed a notice

of appearance in this case, so her work was more akin to that of a law clerk. Accordingly, the Court will reduce Long's hourly rate to $275.

### d. Nathaniel Cobbett

Handy Jones seeks to recover fees for work performed by Nathaniel Cobbett on the first trial at a rate of $400 per hour, but because Cobbett's role and experience is similar to Long's, the Court will reduce his hourly rate to $275 as well. Cobbett began practicing in 2021 and worked for the Cook County Public Defender for two years. (Aff. of Nathaniel Cobbett ¶¶ 3–4, 6, Aug. 31, 2023, Docket No. 131-6.) At the time Cobbett performed the work on this case, he had less than three years of legal experience and similarly never filed a notice of appearance in this case. Thus, the Court will reduce Cobbett's hourly rate to $275.

### 2. Hours Expended

The Court must next determine whether the hours expended were reasonable. In considering whether hours were "reasonably expended," courts should "weigh the hours claimed against their own knowledge, experience, and expertise of the time required to complete similar activities." *Harter*, 894 F.3d at 889 (citation omitted). "The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection." *Woodward v. Credit Serv. Int'l Corp.*, 132 F.4th 1047, 1056 (8th Cir. 2025) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

Handy Jones seeks fees for 2,785.1 hours of attorney work. With the exception of the billing records of White, the billing documents are vague and include excessive hours

and clerical tasks.  For example, O'Connor bills eight hours for "review of file material from Attorney Bosman" on January 11, 2021.  (1st O'Connor Billing R. at 1, Aug. 31, 2023, Docket No. 131-5.)  The Court cannot determine what work was performed in those eight hours and whether it was necessary for the prosecution of this case.  *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991) ("Incomplete or imprecise billing records preclude any meaning review by the district court.").  As another example, Bosman includes a block of 300 hours for the year 2019 that has a one-line description.  (1st Bosman Billing R. at 1, Aug. 31, 2023, Docket No. 131-3.)  That block billing makes it impossible for the Court to conduct adequate review.  *See, e.g.*, *Osseo Area Schs. v. A.J.T.*, No. 21-1453, 2025 WL 904492, at *12 (D. Minn. Mar. 25, 2025); *cf. Safelite Grp. v. Rothman*, No. 15-1878, 2017 WL 3495768, at *6 (D. Minn. Aug. 11, 2017) (acknowledging that the Eighth Circuit has not prohibited block billing but also that block billing makes it difficult to apportion time).  Bosman, Long, and Cobbett also include clerical tasks, as identified in the follow examples, that should not be billed at an attorney rate.  *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989).  Bosman included a time entry for ten hours on July 22, 2023, described as "prepare exhibit books."  (1st Bosman Billing R. at 4.)  Long's six billed hours on January 9, 2025, included the "creation of closing argument powerpoint presentation."  (Long Billing R. at 1, Jan. 27, 2025, Docket No. 208-8.)  Cobbett billed three hours on July 6, 2023, that included work to "edit and revise photo exhib's [sic] and lists."  (Cobbett Billing R. at 1, Aug. 31, 2023, Docket No. 131-7.)  Accordingly, the Court will not reduce White's hours

billed but will reduce the remaining attorneys' hours by fifteen percent to account for vague and excessive billing.[3]

### a.    Success

Defendants insist that the fee request should be reduced further because Handy Jones achieved only limited success.  Defendants do not dispute that Handy Jones is the prevailing party.  But Defendants argue that because several claims were dismissed on summary judgment, Handy Jones did not have complete success leading up to the first trial, and because the second jury award was smaller, she also did not have complete success at the second trial.  When only partial or limited success is achieved, "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."  *Hensley*, 461 U.S. at 436.

The Court finds that Handy Jones obtained excellent results.  Many of the claims were dismissed at summary judgment, but those claims were not distinct from the claims on which Handy Jones prevailed.  In fact, the dismissed claims were bound up in the same claims that survived.  *Id.* at 435.  On her surviving claims, Handy Jones had good success.  Handy Jones received a jury verdict on liability despite there being no video evidence of a police shooting of the armed decedent, which Handy Jones claims is the first ever liability verdict under these factual circumstances.  Handy Jones received not one but two

---

[3] After the fifteen percent reduction, the Court will allow Handy Jones to recover for 1,282.86 hours billed by O'Connor, 803.25 hours billed by Bosman, 120.66 hours billed by Cobbett, and 80.83 hours billed by Long.

multimillion-dollar damages awards from two different juries.  The Court, therefore, determines that a reduction based on Handy Jones's success is unwarranted.

### b.    Lodestar Multiplier

Handy Jones seeks a 2.5x upward multiplier on the lodestar value because the case was difficult, undesirable, and required significant time and labor; counsel was precluded from working on other matters during the pendency of this case; and the complaint was filed shortly before the statute of limitations ran.  Defendants oppose applying any multiplier, claiming that this case is not the rare exception to the presumption that the lodestar adequately represents a reasonable fee.

The Court determines that a 1.5x upward multiplier is appropriate.  Though the lodestar method is presumed to result in a reasonable fee, an upward adjustment may be appropriate in exceptional cases.  *Blum*, 465 U.S. at 897.  The particular undesirability and difficulties associated with this case make it exceptional and worthy of an upward adjustment.

Handy Jones has demonstrated that her case was undesirable because she had difficulty obtaining counsel and unique difficulties in proving her case.  Statutory fees are available to ensure that people can find competent counsel; difficulty finding local counsel can justify an enhancement in fees.  *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 730–31 (1987).  Handy Jones could not easily obtain competent counsel.  Indeed, the attorneys she first obtained filed a notice of voluntary dismissal without prejudice in the first action.  (Notice of Voluntary Dismissal, Feb. 28,

-25-

2019, Docket No. 46, ECF No. 17-1145.)  She was able to secure other counsel and refile her complaint just three weeks before the statute of limitations ran.  (Notice of Removal, Ex. 1 ("Compl."), Mar. 11, 2020, Docket No. 1.)  Then, she still had to engage out-of-town counsel to actually prosecute the case.  (Mot. for Admission Pro Hac Vice, Feb. 8, 2021, Docket No. 22; 1st Aff. of Kevin O'Connor ("1st O'Connor Aff.") ¶ 5, Aug. 31, 2023, Docket No. 131-4.)  Even Attorney O'Connor, an expert in this field, indicated that Handy Jones's case is typically one that he would decline to take on.  (1st O'Connor Aff. ¶ 10.)  While Defendants may be correct that excessive force cases generally are not undesirable, Handy Jones's excessive force case was likely undesirable.

Handy Jones's case also presented significant difficulties in proving her claims.  As stated above, Handy Jones believes this case to be the first in the nation where the deceased was armed, and the jury returned a verdict for the plaintiff despite the absence of video evidence.  The factual particularities of this case made it uniquely difficult to prove, warranting an upward adjustment of the fee award.  *Cf. Rajender v. Univ. of Minn.*, 546 F. Supp. 158, 169–70 (D. Minn. 1982) (finding the difficulties that come with proving sex discrimination supported a fee enhancement).

Because Handy Jones's case was sufficiently undesirable and factually difficult to prove, a 1.5x upward adjustment to the lodestar amount is appropriate.

\*    \*    \*

-26-

In sum, the Court will award $1,738,540.88 in attorney's fees.  The Court will reduce O'Connor's hourly rate to $550, Bosman's hourly rate to $450, and Long's and Cobbett's hourly rates to $275.  The Court will also reduce the hours expended by O'Connor, Bosman, Long, and Cobbett by fifteen percent.  As Defendants do not dispute the rate or hours claimed by White, the Court will not reduce White's lodestar amount.  Those calculations result in a fee award of $1,159,027.25.  Then, to account for the undesirability and specific difficulties of this case, the Court will apply a 1.5x upward multiplier, resulting in a total fee award of $1,738,540.88.[4]

### 3.    Costs

Handy Jones also seeks $49,387.22 in costs.  After the first trial, Handy Jones requested $49,467.22 in costs, of which the Clerk of Court only taxed $480.  Handy Jones did not appeal the Clerk of Court's cost judgment.  Despite a failure to appeal that original cost judgment, a new trial ensued in this case making a renewed evaluation of costs, as with attorney's fees, appropriate.

A prevailing party is entitled to her costs as a matter of course under the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 54(d)(1).  Although Rule 54(d) creates a presumption that prevailing parties are entitled to costs, district courts retain substantial

---

[4] These fees were calculated by multiplying the hourly rates by the number of hours expended (O'Connor: 1,282.86 hours x $550 = $705,573; Bosman: 803.25 hours x $450 = $361,462.50; Cobbett: 120.66 hours x $275 = $33,181.50; Long: 80.83 hours x $275 = $22,228.25; White: 93.8 hours x $390 = $36,582) which resulted in a fee amount of $1,159,027.25.  Then, the Court multiplied that amount by 1.5, resulting in the total fee amount of $1,738,540.88.

discretion in awarding them. *Bathke v. Casey's Gen. Stores, Inc.,* 64 F.3d 340, 347 (8th Cir. 1995). 28 U.S.C. § 1920 defines recoverable costs to include "fees of the clerk and marshal, fees for printed or electronically recorded transcripts necessarily obtained for use in the case, fees and disbursements for printing and witnesses, fees for copies of necessary papers, docket fees, and compensation of court appointed experts and interpreters." *Stanley v. Cottrell, Inc.*, 784 F.3d 454, 464 (8th Cir. 2015) (describing the costs defined in 28 U.S.C. § 1920).

The Court finds that Handy Jones's request overstates the recoverable costs, and that the Clerk of Court's original cost judgment of $480 is reasonable. The bill of costs includes fees that are either unrecoverable or fees that may be recoverable but are insufficiently documented, such that the Court cannot assess their reasonableness. Unrecoverable expenses include attorney travel expenses, *UNI-Sys., Inc. v. Delta Air Lines, Inc.*, No. 4-96-973, 2002 WL 505914, at *3 (D. Minn. Mar. 28, 2002), shipping expenses, *Pinkham v. Camex, Inc.,* 84 F.3d 292, 294–95 (8th Cir. 1996), and expert fees, 42 U.S.C. 1988(c). The Court finds that all of the costs designated under the category label "other costs" on the bill of costs are also unrecoverable. Transcript fees are typically recoverable when necessarily obtained for use in the case, 28 U.S.C. § 1920(2), but the bill of costs here does not provide any documentation on the necessity of those transcripts making them unrecoverable. *UNI-Sys.*, 2002 WL 505914, at *2. Accordingly, the Court will award $480 in costs.

**IV.     PREJUDGMENT INTEREST**

Handy Jones seeks prejudgment interest in the amount of $562,082 on the $1 million past damages awarded by the jury.[5]

Under Minnesota law, the prevailing party may recover prejudgment interest on any judgment from the date the action commences until the time of the verdict.  Minn. Stat. § 549.09, subd. 1(b).  Excluded from prejudgment interest are awards for future damages.  *Id.*

The jury awarded $1 million in past damages.[6]  Defendants argue that despite being labelled as past damages, because those damages were not reasonably ascertainable until the moment the jury rendered its verdict, prejudgment interest is unavailable.  But the Minnesota Supreme Court unequivocally stated that prejudgment interest may be awarded "irrespective of a defendant's ability to ascertain the amount of damages for which he might be held liable."  *Lienhard v. State*, 431 N.W.2d 861, 865 (Minn. 1988).  True, some Minnesota courts still apply that pre-*Lienhard* standard.  *See, e.g.*, *Miller v. Bd. of Regents of Univ. of Minn.*, 402 F. Supp. 3d 568, 590 (D. Minn. 2019).

---

[5] Defendants argue that the law of the case should govern the Court's decision.  However, upon retrial, the jury rendered its verdict on a different verdict form that distinguished between past and future damages.  The Court is tasked with determining the appropriateness of interest under different findings by the jury.  Because of this difference, the Court finds the law of the case inapplicable.

[6] Handy Jones requests prejudgment interest on the punitive damages award from the date of the previous judgment, September 11, 2023.  But prejudgment interest is not available on punitive damages, Minn. Stat. § 549.09, subd. 1(b)(3), so the Court may not impose prejudgment interest on the $1.5 million punitive damages award from the first trial.

But under Minnesota law, continuing to apply the "reasonably ascertainable" test is incorrect. *See Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 845 F. Supp. 2d 975, 978–79 (D. Minn. 2012)). Indeed, several courts have applied prejudgment interest when the value was not reasonably ascertainable at the time the claims were filed. *See, e.g.*, *McDougall v. CRC Indus., Inc.*, No. 20-1499, 2024 WL 4894656, at *13 (D. Minn. Nov. 26, 2024); *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 869–70 (8th Cir. 2004) (affirming prejudgment interest on an award that was not readily ascertainable). Because the jury awarded $1 million in past damages, those damages are eligible for prejudgment interest from the commencement of the action, February 21, 2020,[7] through the date the verdict was rendered, January 13, 2025.[8]

Having determined that prejudgment interest is available, the Court must determine the appropriate rate. It is undisputed that the verdict was against the individual officer Nathaniel Younce, and that the City of St. Paul must indemnify him. Defendants argue that because the required indemnification renders the verdict de facto against the City, the Court should apply the lower interest rate. But the clear text of the statute makes ten percent the appropriate interest rate. The statute mandates a lower

---

[7] Though the action was removed to federal court on March 11, 2020, it was commenced in state court on February 20, 2020. (*See* Compl.)

[8] By the Court's calculation, the year 2020 had 315 days that accrued prejudgment interest, the years 2021, 2022, and 2023 each had 365 days that accrued prejudgment interest, the year 2024, as a leap year, had 366 days that accrued prejudgment interest, and the year 2025 had 13 days that accrued prejudgment interest. In total, there were 1,789 days.

rate for a "judgment or award for or against the state or a political subdivision of the state." Minn. Stat. § 549.09, subd. 1(c)(1)(i). But the judgment is not against the City; it is against Nathaniel Younce. The Court will apply a ten percent interest rate.

In sum, the Court will award prejudgment interest at a rate of ten percent per year on the $1 million past damages award from the date the complaint was filed until the jury rendered its verdict. The total prejudgment interest amount is $490,132.33.[9]

## CONCLUSION

On retrial for compensatory damages alone, a jury awarded Handy Jones $3.25 million. Combined with an unchallenged punitive damages award of $1.5 million, Handy Jones received a total award of $4.75 million. Now, Handy Jones asks the Court to reinstate the original $10 million compensatory award from a previous jury trial, or in the alternative, grant a new trial. The Court finds no basis to review Judge Doty's remittitur order, and so the Court will not vacate the second jury's award to reinstate the original compensatory award. The Court will also deny Handy Jones's alternative request for a new trial because none of the alleged errors caused Handy Jones any prejudice. The Court will grant Handy Jones's motion for attorney's fees, costs, and prejudgment interest in part. Handy Jones is entitled to attorney's fees in the amount of $1,738,540.88, costs in

---

[9] This sum was calculated by dividing ten percent of the principal, which is $100,000, by 365 days to get a daily prejudgment interest amount of $273.97. The daily prejudgment interest amount was then multiplied by 1,789 days to reach the total prejudgment interest amount of $490,132.33. Handy Jones calculated the interest amount to be $583,879 but does not show any calculations, so it is unclear how she reached that amount.

the amount of $480, and prejudgment interest on the past damages in the amount of $490,132.33.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Second Motion for Attorney's Fees [Docket No. 207] is **GRANTED in part** as follows:

   a. Plaintiff shall recover from Defendant Nathaniel Younce attorney's fees in the amount of $1,738,540.88.

   b. Plaintiff shall recover from Defendant Nathaniel Younce costs in the amount of $480.

   c. Defendant Nathaniel Younce is ordered to pay prejudgment interest in the amount of $490,132.33.

2. Plaintiff's Motion to Alter/Amend/Correct Judgment [Docket No. 220] is **DENIED**.

3. Documents provided to the Court by Defendants referencing gang affiliation are entered into the trial record as Court Exhibits 1, 2, and 3, and restricted to the parties.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:  August 8, 2025
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge